UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GARRIEN F. TILLMAN,

                                        Plaintiff,                    **REPORT AND RECOMMENDATION**

v.

DOREEN M. HOFFMAN, individually and in                    1:21-cv-1269-JLS-JJM
her capacity as an assistant district attorney for
Niagara County,

TROY EARP, individually and in his capacity
as a detective for the Niagara Falls Police
Department, and

SHAW BOSI, individually and in his capacity
as a detective for the Niagara Falls Police
Department;

                                        Defendants.

_____

      Plaintiff Garrien F. Tillman commenced this action pursuant to 42 U.S.C.

§1983, alleging violations of his civil rights following his July 17, 2019 arrest on charges of

reckless endangerment and criminal possession of a weapon, relating to a June 8, 2019 gunfight

at Players Bar in Niagara Falls, New York. Amended Complaint [1], ¶17.[1] Tillman was indicted

for those charges on October 25, 2019. Id. ¶ 44. The indictment was dismissed on October 21,

2020. Id. ¶ 49. Before the court are defendants' motions to dismiss pursuant to Fed. R. Civ. P.

("Rule") 12(b)(6) [12, 13], which have been referred to me by District Judge John L. Sinatra, Jr.

_____

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page
references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

for initial consideration [14].  Having reviewed the parties' submissions [12, 13, 21, 22, 23], and having heard oral argument on May 18, 2022, I recommend that the motions be granted.

## BACKGROUND

This action arose from a June 8, 2019 gunfight outside of Player's Bar in Niagara Falls, New York.  Complaint [1] ¶ 8.  Defendants Shaw Bosi and Troy Earp, both detectives for the Niagara Falls Police Department, investigated the incident.  Id. at ¶¶ 5, 6, 10-16.  They identified plaintiff as one of the participants in the gunfight.  Id. ¶ 13.  Although defendants could not personally identify plaintiff in the bar's surveillance footage of the incident, his parole officer identified him.  He was also identified as a shooter in Bosi's interview with Johnny Mulkey, another suspected shooter.  Id. at ¶¶ 13-16.

Based upon the information he developed during the investigation, Earp filed criminal charges against plaintiff.  Id. ¶ 16.  He documented the information developed during his investigation in a Supporting Deposition.  Id. ¶¶ 13-14, 16.  Plaintiff was arrested on July 17, 2019.  Id. ¶ 17.

A grand jury was impaneled on October 18, 2019.  Id. ¶ 18.  Defendant Doreen M. Hoffman, an assistant district attorney, presented evidence to the grand jury concerning the gunfight, including testimony from Earp and Bosi.  Id. ¶¶ 19-32.  The evidence Hoffman presented to the grand jury included the hearsay identifications of plaintiff to Earp and Bosi, but no testimony from any individual who could personally identify plaintiff as a shooter.[2]  Id. ¶¶ 23, 29, 34.

---

[2]      All parties agreed during oral argument that non-hearsay evidence concerning Tillman's identity was required before the grand jury.

The grand jury indicted plaintiff for reckless endangerment and criminal possession of a weapon on October 25, 2019.  Plaintiff was arraigned on November 8, 2019.  Id. ¶ 44.  Plaintiff claims that he raised the issue of the defective identification evidence at multiple appearances in state court related to his criminal charges and requested that the charges be dismissed.  Id. ¶ 45.  Hoffman opposed plaintiff's requests verbally and in writing in response to plaintiff's written motion to dismiss the charges.  Id. ¶¶ 45-47.  Plaintiff alleges that Hoffman "misrepresented to the Court that defendant [Earp] knew Mr. Tillman and therefore could properly identify Mr. Tillman as one of the three shooters in the surveillance footage".  Id. at ¶ 49.  Shortly before a hearing scheduled to determine whether the indictment was based upon an appropriate identification, Hoffman "agreed that the identification of Mr. Tillman was based on impermissible hearsay".  Id. ¶ 49.  The trial court then denied Hoffman's request to resubmit the case to the grand jury, and dismissed the charges against plaintiff, "finding that a resubmission of the case to the grand jury would violate CPL § 30.30, which provides that the commencement of a criminal proceeding for a felony must be within six months after the first accusatory paper is filed".  Id. ¶ 50.

As a result of these events, plaintiff remained in custody from his arrest on July 17, 2019 through November 30, 2020.  Id. ¶¶ 17-18.  Plaintiff filed this action on December 7, 2021.  Id.  He asserted four claims for relief against defendants in their individual and official capacities for violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments pursuant to 42 U.S.C. §1983:

1. Malicious Prosecution, in violation of his rights under the 4th and 14th Amendments, from January 17, 2020 to November 20, 2019 (id. ¶¶ 56-65);

2. False Imprisonment, in violation of his rights under the 4th and 14th Amendments from July 17, 2020 to November 20, 2019 (id. ¶¶ 66-75);

3. Conspiracy to Violate his Constitutional Rights, in violation of the 4th and 14th Amendments (id. ¶¶ 76-81); and

4. Denial of his Right to a Fair Trial, in violation of the 5th, 6th, and 14th Amendments (id. ¶¶ 82-88).

Plaintiff agreed that the claim against Hoffman in her official capacity must be dismissed pursuant to the state's sovereign immunity. Accordingly, I recommend that the court dismiss that claim. Defendant Hoffman argues that the claims asserted against her in her personal capacity should also be dismissed because she is absolutely immune from prosecution for acts she performed as part of the judicial process. *See* Hoffman Memorandum of Law [13-2] at 10-13. Earp and Bosi argue that they are entitled to qualified immunity because plaintiff has not adequately alleged that their actions caused any violation of his Constitutional rights, and because it was objectively reasonable for them to believe that their actions did not violate plaintiff's rights. Bosi and Earp's Memorandum of Law [12-2] at 3-13. In addition, they argue they are entitled to dismissal of plaintiff's claims for malicious prosecution and false arrest because there was probable cause to charge and arrest plaintiff. *See* Bosi and Earp Memorandum of Law [12-2] at 8; Bosi and Earp's Reply Memorandum of Law [23] at 4-6. Finally, they argue that the cause of action for denial of a right to a fair trial should be dismissed because they did not fabricate evidence. Bosi and Earp's Memorandum of Law [12-2] at 12-13.

Plaintiff responds that Hoffman is not entitled to absolute immunity because her actions were investigative, rather than prosecutorial, and because she acted without jurisdiction over defendant. Plaintiff argues that none of the defendants are entitled to qualified immunity because their alleged omission of information from their testimony to the grand jury was the equivalent of false statements and fabrication of evidence, which qualified immunity does not

excuse.  He argues further that he has stated a cause of action for each of his theories of liability

and that no probable cause existed for his arrest and subsequent proceedings.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but

it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." Id. (internal quotations

omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id.  See also Harris v. Mills, 572 F.3d 66, 72 (2d Cir.

2009) (citing Iqbal, supra).

This court, "in deciding whether to dismiss a complaint under Rule 12(b)(6), 'is

generally limited to the facts as presented within the four corners of the complaint, to documents

attached to the complaint, or to documents incorporated within the complaint by reference'".

Williams v. Time Warner Inc., 440 Fed. Appx. 7, *9 (2d Cir. 2011) (Summary Order) (quoting

Taylor v. Vermont Department of Education, 313 F.3d 768, 776 (2d Cir. 2002)).  Here, the

Complaint incorporates several exhibits: A) Earp's July 17, 2019 supporting deposition; B) a

video recording of Bosi's June 30, 2019 police interview with Johnny Lee Mulkey; C) pages 1

through 100 of a 112-page transcript of October 18, 2019 Grand Jury Minutes; D) an unsigned,

October 22, 2019 supporting deposition of Brian Bailey; and E) a Hoffman affidavit, sworn to

September 1, 2020, in the New York State criminal matter against plaintiff.  *See* Complaint [1],

¶¶ 13, 15, 20, 37, 47.  At the pleading stage, I must "assume that all well-pleaded factual

allegations in the complaint are true unless they are contradicted by more specific allegations or

documentary evidence."  Vengalottore v. Cornell University, 36 F.4th 87, 112 (2d Cir. 2022)

(internal alterations omitted).  That rule is also "inapplicable to legal conclusions".  Ashcroft,

556 U.S. at 678 (2009).

## I.      Defendant Hoffman is Absolutely Immune from Plaintiff's Allegations

### A.  Absolute Prosecutorial Immunity

Prosecutors enjoy absolute immunity from civil suits for actions taken both in and

out of court, so long as those actions are related to the judicial phase of a criminal prosecution:

> "Absolute immunity bars a civil suit against a prosecutor for
> advocatory conduct that is intimately associated with the judicial
> phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409,
> 430 . . . (1976).  This immunity attaches to conduct in court, as
> well as conduct "preliminary to the initiation of a prosecution and
> actions apart from the courtroom." *Id*. at 431 n. 33 . . . .
>
> An official claiming immunity bears the burden of showing that
> the particular immunity claimed applies.  *See Burns v. Reed*, 500
> U.S. 478, 486-87 . . . (1991).  In determining whether absolute
> prosecutorial immunity attaches, we apply a 'functional approach.'
> *Hill* [*v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995)].
> 'Prosecutorial immunity from § 1983 liability is broadly defined,
> covering "virtually all acts, regardless of motivation, associated
> with [the prosecutor's] function as an advocate."' *Id.* at 661".

Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012).  Both the Second Circuit and the Supreme

Court have had multiple opportunities to consider the boundaries of absolute immunity.  The

Supreme Court highlighted the difference between prosecutorial and investigative functions,

which are entitled to only qualified immunity:

> "There is a difference between the advocate's role in evaluating
> evidence and interviewing witnesses as he prepares for trial, on the

> one hand, and the detective's role in searching for the clues and
> corroboration that might give him probable cause to recommend
> that a suspect be arrested, on the other hand.  When a prosecutor
> performs the investigative functions normally performed by a
> detective or police officer, it is neither appropriate nor justifiable
> that, for the same act, immunity should protect the one and not the
> other."

Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  The Supreme Court has made it clear that

preparing evidence before presenting it to the grand jury is a prosecutorial, rather than

investigative, function:

> "We have not retreated, however, from the principle that acts
> undertaken by a prosecutor in preparing for the initiation of
> judicial proceedings or for trial, and which occur in the course of
> his role as an advocate for the State, are entitled to the protections
> of absolute immunity.  Those acts must include the professional
> evaluation of the evidence assembled by the police and appropriate
> preparation for its presentation at trial or before a grand jury after a
> decision to seek an indictment has been made."

Id. at 273 (internal citations and quotations omitted).  "We recognize that a prosecutor is immune

from liability for out-of-court efforts to control a witness' grand jury testimony that are made

subsequent to the decision to indict."  Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995)

(citing Buckley, supra).  Rather than the intent of any particular prosecutor's actions, the relevant

inquiry is the nature of the actions themselves:

> "The relevant question, therefore, is whether a reasonable
> prosecutor would view the acts challenged by the complaint as
> reasonably within the functions of a prosecutor.  If the generic acts
> are within those functions, absolute immunity applies to protect the
> prosecutor even in the face of a complaint's allegations of
> malicious or corrupt intent behind the acts. . . . Otherwise, absolute
> immunity would not be absolute.
> . . .
>
> The Supreme Court has identified evaluating evidence and
> interviewing witnesses as falling on the absolute immunity side of
> the line, leaving searching for the clues and corroboration that

> might lead to a recommendation for an arrest on the qualified
> immunity side. . . .
>
> [I]nvestigative acts reasonably related to decisions whether or not
> to carry on a particular criminal prosecution . . . are shielded by
> absolute immunity when done by prosecutors."

Giraldo v. Kessler, 694 F.3d 161, 166 (2d Cir. 2012) (internal quotations and citations omitted).

In addition to the exception for investigative functions, a prosecutor loses the benefit of absolute immunity when her actions fall outside her authority. Bernard v. County of Suffolk, 356 F.3d 495, 504-505 (2d Cir. 2004) ("[a] defendant engaged in advocative functions will be denied absolute immunity only if he acts without any colorable claim of authority") (internal citation omitted).

Plaintiff agrees that, "[s]ubject to certain exceptions, prosecutors are absolutely immune from suits for monetary damages when they engage in activities that are 'intimately associated with the judicial phase of the criminal process,' . . . and done 'in the course of [their] role as . . . advocates[s] for the State.'" Plaintiff's Consolidated Response [21] at 13 (citing Buckley, supra and Imbler, supra). Plaintiff argues that Hoffman's actions fall within one or both of the exceptions. First, he argues that defendant Hoffman's actions were investigative in nature, and not entitled to the protection of absolute immunity. Id. at 14-19. Secondly, he argues that Hoffman acted in the clear absence of jurisdiction, also removing her actions from the protection of absolute immunity. Id. at 14, 19-21.

I disagree. The allegations of plaintiff's complaint demonstrate that Hoffman's actions were performed in her prosecutorial capacity, and that she acted within her jurisdiction. Accordingly, Hoffman is entitled to absolute immunity. I therefore recommend that this court grant her motion and dismiss the Complaint against her. I outline plaintiff's allegations against Hoffman and address each of plaintiff's arguments below.

**B.  Plaintiff's Allegations of Hoffman's Conduct**

Plaintiff alleges that Hoffman presented to the grand jury hearsay identification

evidence from defendants Earp and Bosi "when she knew full well that defendant Earp had no

personal knowledge from which to do so" and that she "knew that Parole Officer Brian Bailey

was the only law enforcement officer who could identify Mr. Tillman in the surveillance footage,

and that defendants Earp and Bosi's identification of Mr. Tillman as one of the shooters during

the grand jury hearing was improper".  Complaint [1], ¶¶ 35-36.   Defendant Earp testified:

> Earp:   [W]e had a little bit of a hard time having witnesses come
> forth, even though the bar was packed, but *we found some officers
> that could identify the people in the video*.
>
> Hoffman:      And who did you identify as your potential
> suspects?
>
> Earp:         Johnny Mulkey, Garrien Tillman and Julian Seright.
>
> Hoffman:     *And knowing these three individuals*, have you
> reviewed the video and are you able to identify who different
> people are and what they're doing?
>
> Earp:           Yes.

Id., ¶ 23 and Exhibit C to Complaint [1-1] at 16 (emphasis added).  Plaintiff alleges that

"Hoffman did not ask defendant [Earp] a single question about whether he knows or recognizes

Mr. Tillman", such as whether he had any personal or professional encounters with plaintiff,

knows plaintiff, or how he was able to identify plaintiff.  Id. ¶ 25.  He further alleges:

> "None of these questions were asked by [Hoffman] because
> defendants Hoffman, [Earp], and [Bosi] knew that the officers did
> not know, and therefore could not identify, Mr. Tillman.  Upon
> information and belief, defendant Hoffman met with the testifying
> officers, including defendants Earp and Bosi, prior to the grand
> jury hearing as a prosecutor certainly would not call a witness in
> support of their case without interviewing the individual.  Upon
> further information and belief, defendants Earp and Bosi both told

> defendant Hoffman during their meetings that they did not know
> Mr. Tillman and therefore could not identify him in the
> surveillance video."

Id., ¶ 26.

Plaintiff alleges that, "[k]nowing that defendant Troy Earp did not know Mr. Tillman and that he relied on 'other officers' to allegedly identify Mr. Tillman as one of the three shooters, defendant [Hoffman] breezed past this fact and proceeded with her questioning as if defendant Earp himself knew and could identify the suspects". Id., ¶ 27. "In fact, defendant Troy Earp testified at length about the surveillance video and attributed various states of mind, intentions, and roles to various individuals in the video that defendant Earp could not possibly have known or have had any first-hand knowledge of.  All of this testimony by defendant Earp went completely unchecked by defendant [Hoffman]". Id., ¶ 28.

With respect to defendant Bosi's testimony before the grand jury, plaintiff alleges that he "testified that he took a statement from Johnny Lee Mulkey, and that Mr. Mulkey 'admitted to being at Players at the time of the incident.  He said he had a confrontation with Shawn Armstrong, Garrien Tillman, Julian Seright". Id., ¶ 29.  Plaintiff alleges that the video of Mr. Mulkey's interview, which is attached to the Complaint, "demonstrates that at no time did Mr. Mulkey identify Mr. Tillman as one of the shooters". Id., ¶ 30.  He alleges that Hoffman "knew, or should have known based on her review of the recorded statement, that Mr. Mulkey never identified Mr. Tillman as one of the shooters". Id., ¶ 31.

### C.  Hoffman's Actions Were Prosecutorial Rather than Investigative

Plaintiff's allegations leave no doubt that the actions and omissions alleged were prosecutorial, rather than investigative, in nature.  It cannot be seriously questioned that the Hoffman's statements and conduct before the grand jury or the trial court, and the statements she

made in submissions to the trial court, were part and parcel of the judicial process.  *See* Pinaud v.

County of Suffolk,  52 F.3d 1139, 1149 (2d Cir. 1995) (absolute immunity applied to prosecutor

who made misrepresentations to the grand jury).  Even if the statements Hoffman made in court,

or the evidence provided to the grand jury, were fabricated and outright false, Hoffman would

nevertheless be entitled to absolute immunity:

> "We turn to the sixth act, the charge of deliberate fabrication of
> false evidence, which lies at the heart of the plaintiff's complaint . .
> . .  Whether Adago may be sheltered by absolute immunity from
> liability for these alleged actions turns on whether or not they
> occurred in the course of his role as an advocate. . . . We recognize
> that a prosecutor is immune from liability for out-of-court efforts
> to control a witness' grand jury testimony that are made
> subsequent to the decision to indict. . . . But such immunity does
> not protect efforts to manufacture evidence that occur during the
> investigatory phase of a criminal case."

Hill v. City of New York, 45 F.3d 653, 662 (2d Cir. 1995) (*citing* Buckley, supra).

Moreover, Hoffman is entitled to absolute immunity for her decision to oppose

dismissal of the indictment.  Giraldo, 694 F.3d at 166 ("acts reasonably related to decisions

whether or not to . . . carry on a particular criminal prosecution . . . are shielded by absolute

immunity").

The remaining conduct alleged by plaintiff is Hoffman's meeting with Earp and

Bosi prior to presenting their testimony to the grand jury.  *See* Complaint [1], ¶ 26.  Plaintiff's

allegations demonstrate that the investigatory phase of the criminal case against defendant had

concluded before Hoffman met with Bosi and Earp.  Plaintiff alleges that Bosi and Earp

accurately informed Hoffman of the sources of their identification of plaintiff.  Complaint [1] ¶

26 ("defendants Earp and Bosi both told defendant Hoffman during their meetings that the did

not know Mr. Tillman and therefore could not identify him in the surveillance video").

Defendant Earp had already filed charges against the plaintiff based upon this evidence.  Id. ¶¶

13, 16-17; *see also* Exhibit A to the Complaint [1-1] at 2.  Further, the Complaint concedes that

the alleged meeting took place as part of Hoffman's preparation for presenting Earp's and Bosi's

testimony to the grand jury:

> "Upon information and belief, defendant Hoffman met with the
> testifying officers, including defendants Earp and Bosi, prior to the
> grand jury hearing ***as a prosecutor certainly would not call a
> witness in support of their case without interviewing the
> individual.***"

Complaint [1] ¶ 26 (emphasis added).  Interviewing a witness prior to presenting his testimony to

the grand jury falls squarely within conduct recognized by the Supreme Court to be

prosecutorial, rather than investigative, in nature:

> "We recognize that the duties of the prosecutor in his role as
> advocate for the State involve actions preliminary to the initiation
> of a prosecution and actions apart from the courtroom.  . . .
> Preparation, both for the initiation of the criminal process and for a
> trial, may require the obtaining, reviewing, and evaluating of
> evidence."

Imbler, 424 U.S. at 431, n. 33; *see also* Vann v. City of Rochester, 2019 WL 2646616, *4

(W.D.N.Y. 2019).  Here, plaintiff's allegations make clear that initial charges were filed against

plaintiff, and he was arrested, on July 17, 2019.  Complaint [1], ¶ 17.  There are no allegations

that Hoffman was involved in the initial investigation or that her efforts developed any of the

evidence used by defendant Earp to establish the probable cause necessary to charge and arrest

plaintiff.  Hoffman did not present this case to the grand jury until October 18, 2019 – months

after defendant Earp charged plaintiff.  *See* Complaint [1], ¶ 19.  Hoffman's alleged interview of

Bosi and Earp, therefore, could not have played a role in the investigatory process required to

establish probable cause.

Plaintiff's allegations of an out-of-court conspiracy between Hoffman, Bosi and

Earp related to their conduct before the grand jury does not remove Hoffman's participation from

the protection of absolute immunity:

> "Yet, try as he might, [plaintiff's] attempt to avoid the defense of
> absolute prosecutorial immunity by fashioning his claim in terms
> of a conspiracy based only on actions taken outside the courtroom
> does not avail. The Supreme Court recently explained in *Buckley v.
> Fitzsimmons* . . . that any claim that absolute immunity is to be
> confined to conduct occurring in the courtroom was 'plainly
> foreclosed by . . . *Imbler*.' . . . Rather, as *Imbler* first explained and
> *Buckley* underscored, absolute immunity extends to those acts,
> whether in or out of the courtroom, 'which occur in the course of
> the [prosecutor's] role as an advocate for the State.' . . .
>
> As this Court and other[] circuits have repeatedly held, since
> absolute  immunity covers 'virtually all acts, regardless of
> motivation, associated [the prosecutor's] function as an advocate,'
> . . . when the underlying activity at issue is covered by absolute
> immunity, the 'plaintiff derives no benefit from alleging a
> conspiracy.'"

<u>Pinaud v. County of Suffolk</u>, 52 F.3d 1139, 1148 (2d Cir. 1995) (internal citations omitted).

Accordingly, I find that Hoffman's alleged actions, omissions, and statements are

related to her prosecutorial duties and were not investigative in nature.

### D.  Hoffman Acted Within Her Jurisdiction

Next, plaintiff argues that, because the court was without jurisdiction over his

criminal case due to the faulty indictment, Hoffman was acting in excess of her own jurisdiction

and is not entitled to absolute immunity.

> "A defendant engaged in advocative functions will be denied
> absolute immunity only if he acts without any colorable claim of
> authority. . . . The appropriate inquiry, thus, is not whether
> authorized acts are performed with a good or bad *motive*, but
> whether the *acts* at issue are beyond the prosecutor's authority.  . . .
> [A] court will begin by considering whether relevant statutes
> authorize prosecution for the charged conduct.  If they do not,
> absolute immunity must be denied. . . . But if the laws do authorize

prosecution for the charged crimes, a court will further consider whether the defendant has intertwined his exercise of authorized prosecutorial discretion with other, unauthorized conduct. For example, where a prosecutor has linked his authorized discretion to initiate or drop criminal charges to an unauthorized demand for a bribe, sexual favors, or the defendant's performance of a religious act, absolute immunity has been denied. . . .

[W]e conclude that, regardless of defendants' political motives, **absolute immunity shields them from suit pursuant to § 1983** for their alleged malicious or selective prosecution of plaintiffs, as well as **for any misconduct in the presentation of evidence to the grand juries that returned the challenged indictments against plaintiffs**."

Bernard v. County of Suffolk, 356 F.3d 495, 504-505 (2d Cir. 2004) (emphasis added); *see also*

Barr v. Abrams, 810 F.2d 358 (2d Cir. 1987). Here, plaintiff does not dispute that Hoffman

acted within her authority to pursue indictment for the crimes charged. Nor does he allege that

Hoffman engaged in the type of "unauthorized conduct" identified by the Second Circuit in

Bernard, supra. Instead, plaintiff relies upon People v. Pelchat, 62 N.Y.2d 97 (1984) to support

his argument that "there was no statutory authority for Defendant Hoffman's continued

prosecution of Plaintiff". Plaintiff's Consolidated Response [21] at 20. Pelchat, however,

focuses on the viability of an indictment that was obtained "based upon evidence [the prosecutor]

knows to be false", and whether a defendant can challenge that indictment, even after he has

pleaded guilty. The court in Pelchat did not discuss the prosecutor's absolute immunity from a

civil action, nor did it involve hearsay identification evidence.

The defendant in Pelchat was convicted of criminal possession of marijuana

following his guilty plea. After pleading guilty, but before he was sentenced, defendant sought

to have his conviction reversed, arguing that "the indictment was fatally defective because the

only evidence before the Grand Jury connecting him with the crime was the testimony of a police

officer who subsequently told the prosecutor that he was unable to identify defendant as a

participant in the crime and that he had misunderstood the question which caused him to do so".

Id. at 99.  Prior to defendant's plea, the testifying officer told the prosecutor in charge of

defendant's case (who had not been the prosecutor that presented the case to the grand jury) "that

he had not observed defendant engage in any criminal activity".  Id. at 101.  The prosecutor

testified that "from that moment on he knew that 'the only testimony I had about Pelchat was

that he was carrying a football jersey, dungarees and sneakers; or he was fully dressed with a

football jersey on, in the ground floor of the house [when he was arrested].'"  Id. at 101.

Notwithstanding this knowledge, the prosecutor failed to disclose the officer's admissions or

make any effort to correct the grand jury proceedings, "leaving both the Grand Jury and the court

with the false impression that Officer Tuthill had actually observed defendant engage in some

criminal activity when in fact he had never made any such observation and had not intended to

testify that he had".  Id. at 101.

    Faced with this fact pattern, the court found:

    "This conviction must be reversed and the indictment dismissed
    because the evidence before the Grand Jury failed to meet legal
    standards and the prosecutor knew that when he permitted the
    court to take defendant's plea to the full indictment. . . . Tuthill's
    evidence was not only material to the charges against defendant, it
    was the only evidence linking him to the unlawful possession of
    marihuana; defendant's presence at the scene of arrest, standing
    alone, would not support the indictment . . . That being so, the
    indictment was fatally defective because the Grand Jury had no
    evidence before it worthy of belief that defendant had committed a
    crime.  Possessing the knowledge he did before the entry of the
    plea, the prosecutor was duty bound to obtain a superseding
    indictment on proper evidence or to disclose the facts and seek
    permission from the court to resubmit the case . . . .  Just as he
    could not sit by and permit a trial jury to decide a criminal action
    on evidence known to be false, he could not permit a proceeding to
    continue on an indictment which he knew rested solely upon false
    evidence".

- 15 -

Id. at 106-107.  Here, the court dismissed the indictment against plaintiff when defendant Hoffman conceded that the identification evidence was insufficient to sustain the indictment. *See* Complaint [1] ¶¶ 49-50.  Plaintiff received the relief arguably required by Pelchat in this case.  His indictment was dismissed.  Pelchat does not stand for the proposition urged by plaintiff: that pursuing an indictment based upon insufficient evidence is equivalent, for purposes of an absolute immunity analysis in a §1983 action, to a prosecutor acting outside of her jurisdictional role.

Plaintiff urges this court to conclude that Hoffman's presentation of hearsay evidence to the grand jury concerning his identity, coupled with her failure to present a witness who could identify plaintiff from personal knowledge and to further question Earp concerning his hearsay identification of plaintiff, is equivalent to presenting false or fabricated evidence to the grand jury.  Plaintiff's Consolidated Response [21] at 21-24.  I decline to do so.  In any event, given the Supreme Court's and the Second Circuit's plain language concerning absolute immunity even where prosecutors fabricate evidence or permit a witness to testify untruthfully, Hoffman's conduct would nonetheless be entitled to absolute immunity.  *See* Imbler, 424 U.S. at 414, 427-30 (prosecutor entitled to absolute immunity for actions performed in the judicial phase of the criminal process even where those actions involved "the culpable use by the prosecution of misleading or false testimony").

## II.  Plaintiff Fails to State a Cause of Action against Defendants Bosi and Earp

### A.  Plaintiff's Allegations as to Defendants Bosi and Earp

Plaintiff's claims for malicious prosecution and false imprisonment incorporate a specific temporal component.  His first claim for relief, for malicious prosecution under 42 U.S.C. § 1983, alleges:

- 16 -

> "60.   Here, Mr. Tillman originally was arraigned by felony complaint on July 17, 2019, and therefore the six-month speedy trial limit was January 17, 2020, by which time the People were required to have obtained a sufficient indictment to comply with CPL § 30.30.
>
> 61.   Thus, **from January 17, 2020 to the ultimate dismissal of the criminal charges after November 20, 2019 [*sic*], Mr. Tillman was prosecuted by the defendants without jurisdiction** as the submission of admissible, non-hearsay evidence to support identification of the accused is a jurisdictional prerequisite for a New York court's jurisdiction over a criminal defendant.  *See Pelchat, supra*.
>
> 62.   Here, the defendants knew, or should have known, that **after January 17, 2020 they lacked jurisdiction to prosecute Mr. Tillman** for criminal charges associated with the June 8, 2019 gunfight, and that their time to resubmit the case to a new grand jury had expired.
>
> 63.   Therefore, **the continuation of the criminal proceeding against Mr. Tillman after January 17, 2020 was done without probable cause** to believe that the plaintiff could be convicted of any of the charges lodged against him, as the Court lacked jurisdiction over the criminal charges as a matter of law."

Complaint [1] at 18 (emphasis added).  Similarly, plaintiff's second claim for relief, false

imprisonment under 42 U.S.C. §1983, focuses on his imprisonment after January 17, 2020:

> "69.   As explained above, **after January 17, 2020, the defendants lacked probable cause** to believe that Mr. Tillman could be found guilty of either of the felony criminal charges filed against him for the June 8, 2019 gunfight.  After that date, the defendants' time to prosecute Mr. Tillman had expired as a matter of law, and therefore the Court lacked jurisdiction to prosecute the plaintiff for the criminal charges lodged against him.  *See* Claim I, *supra*. . . .
>
> 71.   Defendants continuously confined Mr. Tillman **from July 17, 2020** until after the criminal charges ultimately were dismissed by the Court on November 30, 2019 [*sic*]."

Id. at 19-20 (emphasis added).

Plaintiff's third claim, for conspiracy to violate his Constitutional rights under 42

U.S.C. §1983, incorporates the temporal limitation of counts one and two:

> "78.  Defendants conspired amongst themselves to use and present improper, hearsay, and in some cases outright false evidence to support the alleged identification of Mr. Tillman as one of the shooters seen in the surveillance footage.
>
> 79.     Defendants agreed to deprive Mr. Tillman of his constitutional rights and deprived him of his constitutional rights **by pursuing criminal charges against the plaintiff in the absence of proper evidence to identify Mr. Tillman** as one of the shooters in the surveillance footage and therefore in the absence of jurisdiction.  *See Pelchat, supra.*"

Id. at 21 (emphasis added).

Finally, despite the fact that the charges against him were dismissed prior to any

trial, plaintiff alleges in his fourth claim for relief that defendants violated his right to a fair trial:

> "83.  As explained above, Mr. Tillman was deprived of his basic right to a fair institution of criminal proceedings, deprivation of the due process right to justice and fair dealing in the institution and continuation of criminal proceedings, deprivation of the right to an indictment founded upon proper and adequate evidence, deprivation of the due process right to be shielded from police and prosecutorial excesses and misconduct in violation of the law, and deprivation of the due process right to a fair trial in violation of Mr. Tillman's rights under the Fifth, Sixth, and Fourteenth Amendments.
>
> 84.     Defendants knew and had ample reason and opportunity to investigate the propriety of the identification evidence proffered against Mr. Tillman, which was used to charge and indict the plaintiff with felony criminal charges pertaining to the June 8, 2019 gunfight outside Players Bar.
>
> 85.  Nevertheless, defendants engaged in a course of conduct consisting of corrupt practices, official misconduct, perjury, and falsified evidence used by the defendants as identification 'evidence' to support the criminal charges they lodged and pursued against Mr. Tillman.

86.     Defendant Doreen Hoffman actively was involved in meeting with defendants Troy Earp and Shawn Bosi regarding the investigation and prosecution against Mr. Tillman.  During her investigation, defendant Hoffman learned that defendants Earp and Bosi could not identify Mr. Tillman, yet she conspired with the defendants and presented their testimony to the grand jury in a way that misled the jurors and caused them to believe that defendants Earp and Bosi could properly identify Mr. Tillman as one of the three shooters seen in the surveillance footage."

Id. at 21-22.

Plaintiff's factual allegations involving Bosi and Earp focus on their investigation prior to the filing of the July 17, 2019 criminal complaint, the statements Earp made in his supporting deposition for the criminal complaint, and the testimony defendants delivered to the grand jury on October 18, 2019.  *See* id. ¶¶ 10-17, 19, 21-29, 33, 36-42. The Complaint does not allege that defendants Bosi and Earp engaged in any acts (or omissions) after October 18, 2019 that affected the status of his criminal prosecution on January 17, 2020.

### B.  The Law of Constitutional Tort: §1983 Actions

The court's analysis of a constitutional tort, like any other tort, "is guided by common-law principles of tort."  Wray v. City of New York, 490 F.3d 189 (2d Cir. 2007). "[Section] 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.' Since the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read § 1983 as recognizing the same causal link."  Malley v Briggs, 475 U.S. 335, 345 n. 7 (1986).

The rights "to be free from false arrest or prosecution in the absence of probable cause is a long established constitutional right."  Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997).  Further, the "right to a fair trial" is "clearly established".  Id. at 130. "Claims for false arrest or malicious prosecution, brought under §1983 to vindicate the Fourth and

Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest or malicious prosecution under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). *See also* Opoku v. Town of Southampton, 2016 WL 6078327, *8 (E.D.N.Y. 2016); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause constitutes an absolute defense to a false arrest claim, *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995), and similarly defeats a claim for malicious prosecution, *see Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)." Washington v. Napolitano, 29 F.4th 93, 104 (2d Cir. 2022).

Unlike the absolute immunity enjoyed by prosecutors, the immunity afforded to other government actors, such as police officers, is qualified rather than absolute. "Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009).

### 1.    Elements of Malicious Prosecution

"A malicious prosecution claim under New York law requires the plaintiff to prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Id. at 136. Probable cause is an absolute defense to a claim for malicious prosecution. *See* Betts v Shearman, 751 F.3d 78, 82 (2d Cir. 2014).

### 2. Elements of False Imprisonment

"[U]nder New York law, the four elements of a false arrest and imprisonment claim are (1) the defendant had intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged [*i.e.*, the arrest was not supported by probable cause]". Opoku, 2016 WL 6078327 at *8; *see also* Kampfer v. Pitcher, 112 F.3d 504 (2d Cir. 1997). "Probable cause is a complete defense to an action for false arrest brought under New York law or §1983". Schnitter, 556 Fed. Appx. 5, 8 (2d Cir. 2014) (Summary Order) (*quoting* Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012)); *see also* Stansbury v. Wertman, 721 F.3d 84, 89 (2d Cir. 2013).

### 3. Elements of Violation of Right to a Fair Trial

One's right to a fair trial is violated where "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result". Jovanovic v. City of New York, 486 Fed. Appx. 149, 152 (2d Cir. 2012) (Summary Order); *see also* Ricciuti, 124 F.3d at 130 ("[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial"). "Probable cause is not a defense." Id.

### 4. Elements of a Claim for Conspiracy to Violate Constitutional Rights

The elements of a claim for a §1983 conspiracy are: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing

damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999); *see also* Bertuglia v. City of New York, 133 F.Supp.3d 608, 640 (S.D.N.Y. 2015).

      **C.   Plaintiff's Allegations Fail to Allege a Constitutional Violation Caused by Bosi or Earp**

      For the reasons discussed below, I find that plaintiff failed to allege facts sufficient to satisfy the elements of the claimed constitutional violations and recommend that his complaint be dismissed as to defendants Bosi and Earp.

      **1.   Plaintiff's Allegations of "False" and "Fabricated" Evidence**

      As an initial matter, I note that plaintiff has incorrectly characterized Bosi's and Earp's testimony before the grand jury as "false" and "fabricated".  *See* Plaintiff's Memorandum of Law [21] at 3, 5, 10-11, 23, 28, 29, 31, 33, 35.  The plaintiff does not allege in his Complaint that any specific evidence or statements developed by the defendants or presented to the grand jury was false.  Instead, plaintiff makes a general reference to "false evidence" in paragraphs 51 and 78, but fails to identify the specific statements that were false or fabricated.  *See* Complaint [1] ¶¶ 51, 78.  Moreover, defendant Bosi's and Earp's testimony before the grand jury is consistent with the information in the evidence plaintiff attached to his Complaint.  *Compare* Complaint [1], Exhibits A (Supporting Deposition of Troy Earp) and B (video of defendant Bosi's interview with Johnny Mulkey) *with* Exhibit C (October 18, 2019 Grand Jury Minutes, at 16, 24 (transcript pp. 45, 78-79).

      Concerning Bosi's testimony, plaintiff alleges that "[a] review of the recorded statement by Johnny Lee Mulkey demonstrates that at no time did Mr. Mulkey identify Mr. Tillman as one of the shooters".  Complaint [1] ¶ 30; *see also* ¶¶ 14-15, 29-31.  I need not accept this statement as true if it is contradicted by the documentary evidence attached to the Complaint.

*See* Vengalottore, supra.  Review of the actual interview, attached to the Complaint as Exhibit B,

demonstrates that the allegation is incorrect.  Mr. Mulkey states at several points during the

interview that plaintiff (Mulkey refers to him interchangeably as both "Tillman" and

"Greenbay") was at the scene of the shooting and that he saw plaintiff shooting:

> "[9:22] Bosi:  What about Tillman, was he there with you?
> Mulkey:     Tillman, who is he – Greenbay.  Oh, no.
> Bosi:         He wasn't there with you?
> Mulkey:     [inaudible]
> Bosi:         Look at me, I'm trying to do a shooting
>
> ***
> [9:40] Bosi:  Garrien Tillman, he wasn't there?
> Mulkey:     I don't know man, with me?
> Bosi:         Yeah
> Mulkey:     No, he was <u>after</u> me.  <u>After</u> my [inaudible]
> Bosi:         Okay, so he was there?
> Mulkey:     Yeah.
> Bosi:         That's what I want to know.
> Mulkey:     He was there. [9:50]"
>
> ***
> [22:16] "Mulkey:     I'm with Dolson.  Dolson is not shooting
>                         with 'em, shooting  at 'em.  Dolson don't have
>                         anything to do with it.
> Bosi:         Then who's shooting?
> Mulkey:     I don't know.
> Bosi:         Well, you said Tillman was shooting.
> Mulkey:     Who?  Shooting at who?
> Bosi:         Didn't you say Tillman was there shooting?
> Mulkey:     Yeah, I watched him shoot." [22:28]
> ***
> [22:35] "Mulkey:     Dionte.  He shot at that car, he shot at
>                         Dionte, I can testify to that.
> Bosi:         Dionte shot at that car?
> Mulkey:     He shot at that car.
> Bosi:         Who?
> Mulkey:     Greenbay. [22:39]
> Bosi:         Okay, so Greenbay shot at which car?
> Mulkey:     My truck, it was sittin' in front of there."  [22:43]
>
> ***

> [38:25] "Bosi:      Wrap it up for me then John.  If you didn't
>                shoot back and she didn't get one by you by
>                accident who hit her the first time?
> Mulkey:     They was shooting from the first time.
> Bosi:       Who's they?
> Mulkey:     Julian Seright, Greenbay, and Snake.  Snake was
>                supposed to [cut off]
> Bosi:       What's Snake's real name?
> Mulkey:     Jake Seright.
> Bosi:       Jake Seright, Julian Seright, Garrien Tillman.
> Mulkey:     And Garrien Tillman." [38:44]

Complaint [1], Exhibit B at minute marks 9:22-50; 22:16-22:43; 38:25-38:44[3].  These excerpts

are consistent with Bosi's grand jury testimony:

> "Q.     All right.  What did Mr. Mulkey tell you related to the
> incident at Players Bar?
>
> A.     Well, he admitted to being at Players at the time of the
> incident.  He said he had a confrontation with a Shawn Armstrong,
> Garrien Tillman, Julian Seright and Jake Seright.
>
> Q.     Okay.  What else did he tell you?
>
> A.     He told me that at the point of the confrontation they were
> kind of eye fucking each other, Julian Seright, that's when he saw
> Julian Seright pull out a gun and Garrien Tillman, they both started
> shooting at him."

Complaint [1], Exhibit B [1-1] at 24.

Similarly, despite plaintiff's characterization of Earp's testimony in his

Memorandum of Law as "false", he fails to allege in his Complaint that any fact to which Earp

testified was false or inaccurate.  Earp testified concerning how plaintiff was identified in the

surveillance footage of the shooting:

> "Q.     Did you continue your investigation to try and identify the
> individuals that you found on the video?

---

[3]      Transcript prepared by court staff.

> A.     Yes.  We – we had a little bit of a hard time having witnesses come forth, even though the bar was packed, but we found some officers that could identify the people in the video.
>
> Q.     And who did you develop as your potential suspects?
>
> A.     Johnny Mulkey, Garrien Tillman and Julian Seright.
>
> Q.     And knowing those individuals, have you reviewed the video and are you able to identify who different people are and what they're doing?
>
> A.     Yes."

Complaint, Exhibit C [1-1] at 16.  Plaintiff does not allege in his Complaint that Earp's testimony was false.  Instead, he acknowledged that Earp "testified that he could not identify any suspects on that night because no witnesses would cooperate".  Complaint [1] ¶ 23.

Based upon the allegations in the Complaint, and the documentary evidence attached to it, I find that plaintiff failed to allege that defendants Bosi and Earp testified falsely or submitted fabricated evidence to DA Hoffman or to the grand jury.  For this reason, I recommend that this court dismiss plaintiff's claim for denial of the right to a fair trial.

### 2.    Probable Cause Existed to Charge and Arrest Plaintiff

Plaintiff's claims for malicious prosecution and false imprisonment fail because there was probable cause to arrest and charge plaintiff, and probable cause is an absolute defense to these claims.  *See* Washington v. Napolitano, 29 F.4th 93, 104 (2d Cir. 2022) ("[p]robable cause constitutes an absolute defense to a false arrest claim . . . and similarly defeats a claim for malicious prosecution").

Plaintiff does not allege that his arrest, or the charges filed against him by defendant Earp, lacked probable cause.  Plaintiff does not allege in his Complaint that any of the information in the supporting deposition of defendant Earp was false or fabricated.  He does not

allege in the Complaint that parole officer Brian Bailey falsely identified him in the surveillance

video of the shooting, or that defendant Earp fabricated that identification.  He fails to allege that

he did not appear in the surveillance video.  As discussed above, notwithstanding plaintiff's

characterization of defendant Bosi's testimony as "false", the video documenting his interview

with Mr. Mulkey demonstrates that his testimony was accurate.  In short, defendant Earp had

sufficient evidence to support a finding of probable cause.

   Plaintiff argues that "even when probable cause is present at the time of arrest,

evidence could later surface which would eliminate that probable cause".  Plaintiff's

Memorandum of Law [21] at 30, *citing* <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 571 (2d

Cir. 1996).  However, plaintiff does not allege that any evidence or fact that surfaced following

his arrest that established his innocence.  *See* <u>Betts</u>, 751 F.3d at 82.  Instead, he argues that the

"continued prosecution" despite the procedural defect in the indictment was equivalent to "the

lack of probable cause for the continued prosecution".  Plaintiff's Memorandum of Law [21] at

30-31.

   The expiration of time[4] to secure a properly supported indictment, however, is not

a "fact".  It was a procedural rule that worked in his favor.  Plaintiff does not allege in his

Complaint that defendants discovered any exculpatory evidence or other fact that alters the

probable cause analysis here, nor does he allege that any such fact exists.  Instead, plaintiff

attempts to confuse the timeline by arguing that the court's "jurisdiction" to prosecute plaintiff

expired on January 17, 2020, but that defendants Bosi and Earp's testimony before the grand jury

---

[4]  Although defendant Hoffman disputes whether the State's time to secure a proper indictment had
expired (see Hoffman Reply Memorandum of Law [22] at 9), I assume for purposes of this motion,
without deciding, that the People's time to secure a properly supported indictment against plaintiff
expired on January 17, 2020.

three months earlier, that is, at a time when plaintiff does not allege there was a constitutional

violation, supports his claim that Bosi and Earp can be liable for malicious prosecution and false

imprisonment beginning on January 17, 2020.

### 3.    Plaintiff Failed to Allege Personal Involvement or Causal Relationship

Plaintiff's claims for malicious prosecution, false imprisonment, and denial of the

right to a fair trial also fail because he failed to allege that defendants Bosi and Earp were

personally involved in the alleged constitutional violations, or that their actions caused the

constitutional torts actually alleged.  The Complaint fails to allege any causal relationship

between Earp's and Bosi's actions (*i.e.* their testimony before the grand jury on October 18,

2020), and his constitutional injuries, which he alleges occurred on and after January 17, 2020.

To be held liable for a constitutional violation pursuant to 42 U.S.C. §1983, a plaintiff must

allege the personal involvement of the defendant and causal relationship between the defendants'

actions (or omissions) and the constitutional violation.  Townes v. City of New York, 176 F.3d

138, 146 (2d Cir. 1999) ("a § 1983 action, like its state tort analogs, employs the principle of

proximate causation"); Breeden v. City of New York, 2014 WL 173249, *8 (E.D.N.Y. 2014)

("[t]o succeed on a § 1983 claim, a plaintiff must allege that each defendant was directly and

personally involved in the purported unlawful conduct").  Plaintiff alleged neither.

Plaintiff describes in paragraphs 44 through 50 of the Complaint the events that

occurred in his criminal case after the grand jury returned the allegedly defective indictment.

Notably, the only defendant identified in those paragraphs, whose actions influenced the course

of his criminal prosecution, is Hoffman:

> "45.    Mr. Tillman was forced to make multiple appearances to
> defend himself against the jurisdictionally defective charges,
> including appearances on December 19, 2019, February 6, 2020,
> February 27, 2020, and March 17, 2020.  During each of those

hearings, Mr. Tillman raised objection to the identification 'evidence' submitted to the grand jury that purportedly identified him as one of the three shooters seen in the surveillance videos. **Defendant Doreen Hoffman was present for each of those hearings and opposed Mr. Tillman's request to dismiss the indictment.**

\*\*\*

47.    **Defendant Doreen Hoffman continued to opposed Mr. Tillman's motions to dismiss the indictment** up to and following September 1, 2020 when **she filed an affidavit**, sworn to under penalty of perjury, in which she merely argued that 'the Court has already reviewed the minutes of the Grand Jury proceedings and found them to be sufficient.'

\*\*\*

49.    The court scheduled a *Rodriguez* hearing on October 21, 2020.  Up to that point, **defendant Doreen Hoffman misrepresented to the Court that defendant Troy Earp knew Mr. Tillman and therefore could properly identify Mr. Tillman** as one of he three shooters in the surveillance footage.  However, at the *Rodriguez* hearing, right before the Court was ready to call the case, **defendant Hoffman finally relented and agreed that the identification of Mr. Tillman was based on impermissible hearsay**. . . .

50.  **Defendant Doreen Hoffman then requested permission to resubmit the case to the grand jury.** The Court denied that request, and on November 30, 2020 the Court dismissed the charges against Mr. Tillman finding that a resubmission of the case to the grand jury would violate CPL § 20.20 which provides that the commencement of a criminal proceeding for a felony must be within six months after the first accusatory paper is filed."

Complaint [1], ¶¶ 45, 47, 49, 50 (emphasis added).  The only defendant identified in these paragraphs is Hoffman.  According to the allegations in the Complaint, Bosi and Earp's involvement with plaintiff's criminal matter ceased on October 18, 2019.  Accordingly, there is no fact in the complaint linking them to the constitutional violations that allegedly occurred on January 17, 2020.

Moreover, even if I were to assume that Bosi and Earp's testimony on October 18, 2019 was somehow constitutionally deficient, Hoffman's discretionary actions taken between October 18, 2019 and January 17, 2020 severed the proximate cause between Bosi's and Earp's actions and/or omissions and the alleged malicious prosecution and false imprisonment that allegedly occurred on January 17, 2020.  Wray, 490 F.3d at 193 ("[i]n the absence of evidence that officer Weller misled or pressured the prosecution or trial judge, we cannot conclude that his conduct caused the violation of Wray's constitutional rights; rather, the violation was caused by the ill-considered acts and decisions of the prosecutor and trial judge").

### 4.   Plaintiff Failed to Allege Fabrication of Evidence

Plaintiff's claim for denial of the right to a fair trial fails for similar reasons.  The focus of a claim for denial of the right to a fair trial is fabrication of evidence.  Bailey v. City of New York, 79 F.Supp.3d 424, 455 (E.D.N.Y. 2015) ("[t]he right to a fair trial is violated by the creation of false evidence by an investigating official resulting in a conviction").  Here, there are no credible allegations that defendants Bosi and Earp testified falsely, or fabricated any evidence, and plaintiff fails to identify in his Memorandum of Law any such allegation incorporated into the Complaint.  To the extent that any defendant actively presented evidence to the grand jury or attempted to influence the grand jury's view of the identification evidence, the allegations in the Complaint demonstrate that defendant was Hoffman, not Bosi or Earp.  *See, e.g.,* Complaint [1], ¶¶ 25 ("**Defendant Doreen Hoffman did not ask** defendant Troy Earp a single question about whether he knows or recognizes Mr. Tillman"); 27 ("[k]nowing that defendant Troy Earp did not know Mr. Tillman and that he relied on 'other officer' to allegedly identify Mr. Tillman as one of the three shooters, **defendant Doreen Hoffman breezed past this fact and proceeded with her questioning** as if defendant Earp himself knew and could

identify the suspects"); 35 ("[i]ntentionally, or at the very least with knowledge of its impropriety, **defendant Doreen Hoffman presented defendant Troy Earp to the grand jury** as being able to identify Mr. Tillman when she knew full well that defendant Earp had no personal knowledge from which to do so") (emphasis added).

### 5.   Defendants Bosi and Earp are Entitled to Qualified Immunity

Finally, Bosi and Earp are entitled to qualified immunity because "it was objectively reasonable" for them "to believe that [their] conduct did not violate a clearly established right". Manganiello v. Cit of New York, 612 F.3d 149, 165 (2d Cir. 2010) (internal quotations omitted). Here, the Complaint does not allege that defendants Bosi and Earp "misrepresented the evidence to the prosecutors, or failed to pass on material information". Id. Although the Complaint alleges that defendant Bosi's testimony was false, the recording of the interview attached to the Complaint demonstrates that his testimony accurately represented information he learned during the interview. The Complaint alleges no other false statements. Under these circumstances, I find that it was reasonable for defendants Bosi and Earp to believe that testifying truthfully to the grand jury in response to Hoffman's questions did not violate any of defendant's clearly established rights.

For the reasons stated above, I recommend that this court grant Bosi's and Earp's motion to dismiss plaintiff's claims for malicious prosecution, false imprisonment, and denial of the right to a fair trial. Because the Complaint does not adequately allege that defendants Bosi and Earp violated any of his constitutional rights, I recommend that this court likewise dismiss his claim for conspiracy to violate his constitutional rights.

**CONCLUSION**

For these reasons, I recommend that defendants' motions to dismiss [12, 13] be granted.  Unless otherwise ordered by District Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by September 28, 2022. Any requests for extension of this deadline must be made to Judge Sinatra.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: September 14, 2022

/s/ _____

JEREMIAH J. MCCARTHY
United States Magistrate Judge