UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GARRIEN F. TILLMAN

                Plaintiff,

           Civil Action No.: 21-CV-01269

    vs.

DOREEN M. HOFFMAN, TROY EARP,
and SHAWN BOSI,

                Defendants.

---

# PLAINTIFF'S OBJECTIONS TO THE
# REPORT AND RECOMMENDATION OF THE
# <u>MAGISTRATE JUDGE DATED SEPTEMBER 14, 2022</u>

**RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
*Attorneys for Plaintiff*
R. Anthony Rupp III
Chad A. Davenport
1600 Liberty Building
Buffalo, New York 14202
(716) 854-3400
rupp@ruppbaase.com
davenport@ruppbaase.com

## PRELIMINARY STATEMENT

Plaintiff, Garrien F. Tillman, respectfully objects to five conclusions that were reached by the Magistrate in his Report and Recommendation ("R&R"): (1) Defendant Doreen Hoffman is entitled to absolute prosecutorial immunity; (2) Defendants Doreen Hoffman, Troy Earp, and Shawn Bosi did not falsify any evidence in support of the criminal prosecution of Mr. Tillman; (3) the alleged actions and omissions of Defendants Troy Earp and Shawn Bosi do not support their personal involvement and therefore liability for Plaintiff's claims; (4) Plaintiff's imprisonment and prosecution both were supported by probable cause; and (5) Defendants Troy Earp and Shawn Bosi are entitled to qualified immunity.  By virtue of these five conclusions, the Magistrate erred in recommending the dismissal of Plaintiff's complaint in its entirety.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff commenced this action against Defendants on December 7, 2021 pursuant to 42 U.S.C. § 1983 for violations of his civil rights arising from Defendants' misrepresentations to the criminal court regarding the quality of certain evidence presented to the grand jury.  (*See* Dkt. 1).  Specifically, Mr. Tillman's complaint alleges that Defendants conspired to falsely represent to the criminal court that the defendant Officers knew, and therefore could identify, Mr. Tillman as one of the shooters depicted in the surveillance footage that captured the shooting.  (*Id.*)

On February 11, 2022, Defendants Shawn Bosi and Troy Earp filed a motion to dismiss (Dkt. 12), and Defendant Doreen Hoffman filed a separate motion seeking dismissal of the complaint.  (Dkt. 13).  Plaintiff opposed both motions in a consolidated response.  (Dkt. 21).

On May 18, 2022, the parties appeared for oral argument before Magistrate Judge Jeremiah J. McCarthy.  (Dkt. 25).

On September 14, 2022, the Magistrate issued an R&R in which he recommended dismissal of Plaintiff's complaint.  Plaintiff hereby respectfully objects to those portions of the R&R addressed herein.

## STANDARD OF REVIEW

Upon a timely objection to the Magistrate's proposed findings on a dispositive motion, the District Judge must conduct a de novo review.  Fed. R. Civ. P. 72(b).  The de novo review of the Magistrate's Report and Recommendation shall be "upon the record, or after additional evidence," but only as to those portions of the Report and Recommendation to which the party objects.  Fed. R. Civ. P. 72(b); *see also Collins v. Foreman,* 729 F.2d 108, 112 (2d Cir. 1984), *cert. denied,* 469 U.S. 870 (1984).

Under Federal Rule of Civil Procedure 72, the District Court is not bound by the recommendation of the Magistrate; rather, it may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. *Smith v. Marcellus,* 917 F. Supp. 168, 170 (W.D.N.Y. 1995); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989).  The District Court must arrive at its own independent conclusions about those portions of the Magistrate's Report and Recommendation to which objections are made.  *East River Sav. Bank v. Secretary of Housing and Urban Dev.,* 702 F. Supp. 448 (S.D.N.Y. 1988).

A review of the factual circumstances surrounding this lawsuit and the R&R shows that errors have been committed, and portions of the R&R must be rejected, or in the alternative, modified, as set forth herein.

## ARGUMENT

**I.    The Magistrate Erred In Concluding that
       <u>Defendant Hoffman is Entitled to Absolute Immunity</u>.**

In his R&R, the Magistrate found that "[t]he allegations of plaintiff's complaint demonstrate that Hoffman's actions were performed in her prosecutorial capacity, and that she acted within her jurisdiction." (*See* Dkt. 26, at p. 8). Based on these two findings, the Magistrate concluded that Defendant Hoffman is entitled to absolute prosecutorial immunity. (*Id.*)

Initially, because absolute immunity poses a significant risk of "injustice" to the victims of official misconduct, the Supreme Court has been "quite sparing" in its application of absolute immunity, and has declined to extend the doctrine any "further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). In addition, the burden of establishing absolute immunity falls on the party seeking it. *See Butz v. Economou*, 438 U.S. 478, 506 (1978) (finding it is the party claiming absolute immunity who "bears the burden" of establishing its applicability).[1]

### A.    *Defendant Hoffman Acted In Her Investigative Capacity.*

In this case, Plaintiff relies on two exceptions to the general rule of absolute prosecutorial immunity. First, absolute immunity does not apply when a prosecutor acts in an investigative capacity. For example, in *Burns*, although the prosecutor's presentation of evidence in court in support of a search warrant application was protected by absolute immunity,

---

[1] As argued in Plaintiff's opposition to Defendant Hoffman's motion to dismiss, she did not even acknowledge this black-letter distinction between advocacy and investigation, and in doing so she failed to meet her burden and explain why her actions were in her role as an advocate rather than as an investigator. (*See* Dkt. 21, at p. 12 n.4). For this reason alone, the Magistrate erred in granting Defendant Hoffman's motion to dismiss on absolute immunity grounds. *See, e.g., Rosu v. City of New York*, No. 11-CV-5437, 2012 WL 6582534, at *7 (S.D.N.Y. Dec. 13, 2012) (denying motion to dismiss in part because the defendants did not carry their burden with respect to absolute immunity for certain actions alleged by plaintiff to be outside role as advocate).

his provision of legal advice to the police during their pretrial investigation of the facts was not. *See* 500 U.S. at 492-96.  And in *Bukley*, the Court observed that while "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to absolute immunity," absolute immunity does not protect a prosecutor's fabrication of evidence concerning an unsolved crime. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993).  The Court went on the explain that:  "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id.* at 273-74 (internal quotations and citation omitted).

   Applying these principles to the facts alleged in the complaint, it is clear that the Magistrate erred in finding that absolute immunity attaches to Defendant Hoffman's meetings with Officers Bosi and Earp prior to the grand jury hearing.  Specifically, the complaint alleges that Defendant Hoffman met with Officers Bosi and Earp prior to the grand jury hearing, and that both Officers told Defendant Hoffman that, although they had evidence supporting Mr. Tillman's involvement in the Players Bar gunfight, "they did not know Mr. Tillman and therefore could not identify him in the surveillance video." (Dkt. 1, at ¶ 26).  The complaint further alleges that it was during her meeting with Officer Earp that Defendant Hoffman conspired to present him to the grand jury as being able to identify Mr. Tillman in the surveillance video when she knew full well that Defendant Earp had no personal knowledge from which to do so.  (*Id.*, at ¶ 35).  Additionally, the complaint alleges that it was during her meeting with Officer Bosi that Defendant Hoffman conspired to present Johnny Lee Mulkey's alleged identification of Mr. Tillman as a shooter in the Players Club gunfight, despite her

knowledge that Mr. Mulkey's statements were not freely and voluntarily given and obtained in violation of his right to counsel.[2]  (*Id.*, at ¶¶ 26, 30-31).

As explained by the Supreme Court in *Bukley*, absolute immunity does not protect a prosecutor's alleged fabrication of evidence regarding an unsolved crime.  *See* 509 U.S. at 275 (finding that there was no "authority that supports an argument that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime was immune from liability at common law . . . [i]t therefore remains protected only by qualified immunity").  In that case, the fabricated evidence related to a bootprint on the door of the victim's home alleged to have been left by the killer when he kicked in the door.  *Id.* at 262.  After three separate studies by experts from the Du Page County Crime Lab, the Illinois Department of Law Enforcement, and Kansas Bureau of Identification, all of whom were unable to make a reliable connection between the bootprint and a pair of boots that the plaintiff voluntarily had supplied, the defendant prosecutor obtained a "positive identification" from an anthropologist in North Carolina who the plaintiff alleged was well known for her willingness to fabricate unreliable expert testimony.  *Id.* at 262-63.  Based on this false evidence, the defendant prosecutor obtained an indictment of the plaintiff who was then arrested and held in jail because he was unable to meet the $3 million bond that was set.  *Id.* at 264.  The Supreme Court denied the defendant prosecutor's request for dismissal based on an absolute immunity defense, concluding that the fact "the prosecutors later called a grand jury to consider the evidence this [investigative] work produced does not retroactively transform that work from the administrative into the prosecutorial."  *Id.* at 275-76.

---

[2] As explained below, Defendant Bosi may be held liable for his role in presenting this false evidence to the grand jury. (*See* Point II, infra).

This case presents many of the same circumstances as those in *Bukley*, which led the Supreme Court to conclude that the defendant prosecutor was not entitled to absolute immunity. Here, Officers Earp and Bosi were unable to find any cooperating witnesses or victims to identify the shooters, therefore making it an "unsolved crime." (Dkt. 1, at ¶¶ 10-13; Exhibit A). According to Officer Earp's supporting deposition, Mr. Tillman was identified by his parole officer, who watched the surveillance video and identified Plaintiff as one of the shooters. (*Id.*) However, Plaintiff's parole officer, Brian Bailey, did not testify at the grand jury proceeding (despite being identified by Defendant Hoffman to the grand jury as a witness at the hearing), and Mr. Bailey did not sign a supporting deposition that Defendants prepared for him to sign after the grand jury hearing. (*Id.*, at ¶ 32; Dkt. 1-1, at p. 31). Without discovery, it is impossible to know why Mr. Bailey did not testify before the grand jury or why he did not sign the supporting deposition, but the complaint's allegations set forth a plausible basis that Mr. Bailey did not identify Mr. Tillman under the penalty of perjury because he could not actually identify Plaintiff in the surveillance video. (Dkt. 1, at ¶¶ 13, 32, 37-38, and 45-49)

Further, it is plausible that Mr. Bailey told Officers Earp and Bosi that he could not identify Mr. Tillman in the surveillance video under the penalty of perjury. (*Id.*) Therefore, when Officers Earp and Bosi would have met with Defendant Hoffman to discuss the results of their investigation that led to the filing of criminal charges against Plaintiff, it is likely that they would have informed Defendant Hoffman that, without testimony from Mr. Bailey identifying Mr. Tillman as one of the shooters in the surveillance video, they did not have sufficient evidence to secure an indictment of Plaintiff. Indeed, the complaint alleges that Officers Earp and Bosi informed Defendant Hoffman that they did not know Mr. Tillman, had never met or encountered him during their work as NFPD police officers, and therefore could not identify

Plaintiff in the surveillance video. (*Id.*, at ¶¶ 25-26). Thus, after these investigative, pre-grand jury meetings, Defendants, both individually and collectively, had actual knowledge that Officers Earp and Bosi did not know and could not identify Mr. Tillman as one of the shooters in the surveillance footage. (*Id.*)

The complaint's allegations, which must be assumed as true at this stage of the proceeding, allege that it was during these investigative meetings that Defendants discussed and agreed to a plan to overcome the lack of sufficient evidence. Specifically, Defendant Hoffman advised Officers Earp and Bosi that she would present Officer Earp as a witness who knew, and therefore could identify, Mr. Tillman as one of the shooters depicted in the surveillance video. (*Id.*, at ¶¶ 26, 29-31). Based on this advice,[3] and as part of the agreement that they reached during these investigative meetings, Defendant Hoffman misleadingly stated to Officer Earp "*[a]nd knowing these three individuals*" after Officer Earp responded just two questions before that there were "some officers that could identify the people in the video." (*See* Dkt. 1-1, at p. 16) (emphasis added). Defendant Hoffman breezed past this line of questioning to give grand jurors the impression that Officer Earp was one of those unidentified "officers that could identify" Mr. Tillman in the surveillance video, and in furtherance of the plan devised in their pre-grand jury meetings, Officer Earp testified at length as if he knew the three suspects and therefore could identify Mr. Tillman as one of the three shooters in the video, which further misled to grand jury leading the jurors to believe Earp knew Tillman. (Dkt. 1, at ¶¶ 21-28).

---

[3] Of note, it is well settled that absolute immunity does not apply to the prosecutorial function of giving legal advice to police, which provides this Court with another separate basis to find that Defendant Hoffman's pre-grand jury meetings with Officers Earp and Bosi are not shielded by absolute immunity as her advice to mislead the grand jury is not necessary to the function of a prosecutor. *See, e.g.*, *Burns*, 500 U.S. at 496 (holding that a state prosecutor was not entitled to absolute immunity for giving legal advice to police); *McCray v. City of New York*, No. 03-CV-0685, 2007 WL 4352748, at *15 (S.D.N.Y. Dec. 11, 2007) ("if a prosecutor acts in an investigative capacity, for example; or gives police legal advice . . . then absolute immunity cannot be invoked") (citing *Buckley*, 509 U.S. at 270-71); *Amaker v. Coombe*, No. 96-CV-1622, 1998 WL 637177, at *7 (S.D.N.Y. Sept. 16, 1998) (denying absolute immunity to prosecutor who "provide[d] legal advice to the police" during investigation).

Although it is not known specifically at this stage what was discussed during these investigative meetings, discovery is needed to determine what was discussed and agreed to during these pre-grand jury meetings. At this pre-answer stage, Plaintiff already is able to come forward with abundant evidence of Defendants' knowledge of the critical importance of non-hearsay identification evidence to secure an indictment,[4] as well as evidence that Defendants collectively placed great importance on bringing criminal charges against all three shooters. (*See* Dkt. 1-1, Exhibit A, where Officer Earp decided to take it upon himself to bring the criminal charges against Mr. Tillman when no victims would come forward and the Officer wrote in his supporting deposition that "[t]he reckless actions of these three individuals put countless lives in jeopardy and hurts (sic) business in the tourist area of Niagara Falls and beyond.") Thus, when Officers Earp and Bosi met with Defendant Hoffman to discuss the lack of evidence to charge Mr. Tillman, Defendants had the motive and opportunity to conspire to present the false identification evidence at issue. Similar to *Bukley*, if Defendant Hoffman conspired with the Officers to present false identification evidence to secure an indictment regarding an otherwise unsolved crime, then the Court should find that Defendant Hoffman would have crossed the line from an advocate to investigator. *Buckley*, 509 U.S. at 273.

Indeed, the Second Circuit has observed that "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw" in assessing whether particular prosecutorial conduct was undertaken in an "advocacy" or "investigative" capacity.

---

[4] This evidence includes, but is not limited to: (1) Officer Earp identifying from the outset of the investigation in his supporting deposition that proper identification evidence was important to support criminal charges against a suspect and that the investigation lacked such evidence without law enforcement officers who knew the suspect and therefore could identify the suspect in surveillance video capturing the shooting (Dkt. 1-1, Exhibit A); (2) Officer Bosi violating Mr. Mulkey's right to counsel to secure false evidence from Mulkey identifying Mr. Tillman as one of the shooters (*Id.*, Exhibit B); and (3) Defendants preparing a supporting deposition for Brian Bailey identifying Plaintiff as one of the shooters in the surveillance footage just four days after the grand jury hearing when Defendants realized there was a complete lack of non-hearsay identification evidence presented to the grand jury to support an indictment against Mr. Tillman. (*Id.*, Exhibit D).

*Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000). Our Circuit Court further has instructed that, in cases where the nature of the prosecutor's involvement is disputed, unclear, or would benefit from factual development, courts should deny motions to dismiss and determine the immunity question after discovery. *See, e.g., id.* (collecting cases); *Hill v. City of New York*, 45 F.3d 653, 662-63 (2d Cir. 1995) (holding that determination of whether prosecutor's fabrication of evidence occurred at the investigatory or advocacy stage required fact-finding). The Court, therefore, should allow this case to proceed to discovery to determine the nature of Defendants' discussions during the pre-grand jury meetings. Indeed, the complaint's allegations and evidence before the Court set forth a plausible basis that Defendant Hoffman provided Officers Earp and Bosi with advice on how to overcome the evidentiary shortcomings and secure an indictment of Mr. Tillman, and in doing so Defendant Hoffman acted outside her advocacy capacity. Further discovery is necessary in this action.

### B.   *Defendant Hoffman Prosecuted Mr. Tillman Without Jurisdiction.*

Second, Plaintiff also relies on an exception established by well-settled case law that a prosecutor is not absolutely immune from damages "for acts that are manifestly or palpably beyond his authority, . . . or performed in clear absence of all jurisdiction." *Doe v. Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996) (citing *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (internal quotations omitted)). Indeed, the Supreme Court has long recognized that absolute immunity does not protect a government official when she has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). Thus, if the acts alleged to be unconstitutional are "plainly beyond the prosecutor's jurisdiction," then absolute immunity does not apply. *Phillips*, 81 F.3d at 1210 (internal quotations omitted).

Here, the scope of Defendant Hoffman's jurisdiction and authority is defined under New York law. Examination of the relevant case law and statutes shows that there was no statutory authority for Defendant Hoffman's continued prosecution of Plaintiff. In *Pelchat*, the Court of Appeals examined the statutes associated with the grand jury's ability to indict, and thereby provide "the predicate for the court's jurisdiction." *See People v. Pelchat*, 62 N.Y.2d 97, 106 (1984) (citing CPL § 100.05). In that case, the Court explained:

> The Grand Jury's role and procedures are now defined by statute (CPL art. 190). It remains the exclusive judge of the facts with respect to any matter before it (CPL 190.25, subd. 5) and it may indict for an offense only if the evidence spells out a sufficient case and reasonable grounds to believe defendant committed the offense charged (CPL 190.65, subd. 1). "Legally sufficient evidence" means competent evidence which, if accepted as true, would establish every element of the offense and the defendant's commission of it (CPL 70.10, subd. 1) . . . The test is whether the evidence before the Grand Jury if unexplained and uncontradicted would warrant conviction by a trial jury . . . *It is this judgment of the Grand Jury, expressed in an indictment,* <u>*which provides the predicate for the court's jurisdiction*</u> (CPL 100.05).

*Pelchat*, 62 N.Y. at 106 (emphasis added).

In his R&R, the Magistrate misinterpreted the decision of New York's highest court and found that "<u>Pelchat</u> does not stand for the proposition urged by plaintiff: that pursuing an indictment based upon insufficient evidence is equivalent, for purposes of an absolute immunity analysis in a §1983 action, to a prosecutor acting outside of her jurisdictional role." (Dkt. 26, at p. 16). The essence of the *Pelchat* ruling is that it unmistakably explains that a prosecutor is deprived of jurisdiction when an indictment rests on hearsay identification evidence and therefore is fatally defective and jurisdictionally void. In other words, because Defendant Hoffman violated the *Pelchat* rule clearly established by New York's Court of Appeals, she prosecuted Tillman without jurisdiction, and therefore she is not entitled to absolute immunity.

*See, e.g., Simon v. City of New York*, 727 F.3d 167, 174 (2d Cir. 2013) (reversing the district court and finding triable issues of fact as to whether defendant prosecutor was entitled to absolute immunity for issuance of subpoena in violation of New York law).

Defendant Hoffman knew that the submission of admissible, non-hearsay evidence to the grand jury to support identification of the accused is a jurisdictional prerequisite for a New York court's jurisdiction over a criminal defendant.  (*See* Dkt. 1, at ¶ 32, 37-38). Mr. Tillman repeatedly raised objections to the lack of proper identification evidence submitted to the grand jury, and even though Defendant Hoffman was present for each of those hearings, received Plaintiff's multiple pro se motions on the issue, and had ample opportunity to review the minutes of those proceedings to determine the validity of Mr. Tillman's claim, she continued to prosecute Plaintiff based on an empty indictment.  (*Id.*, at ¶¶ 47, 49-50).  Worse yet, she misrepresented to the court during those hearings and in her submissions that Defendant Earp knew Mr. Tillman, and therefore, could properly identify him as one of the shooters in the surveillance footage.  (*Id.*, at ¶¶ 45-49)

*Knowing* that an indictment could not rest on improper identification evidence, and *knowing* that an indictment provides the statutory "predicate for the court's jurisdiction," (*Pelchat*, 62 N.Y.2d at 106), the Court should find that the allegations in Mr. Tillman's complaint plausibly allege that from January 17, 2020 to November 30, 2020, Defendant Hoffman *knowingly* prosecuted Plaintiff without jurisdiction.  As explained in the complaint, six months after the felony criminal charges were filed against Mr. Tillman, without securing a proper indictment, CPL § 30.30 *required* dismissal of the criminal charges pending against Plaintiff on speedy trial grounds. (Dkt. 1, at ¶¶ 57-63).  At hearings on February 6, 2020, February 27, 2020, and March 17, 2020, Mr. Tillman objected to the criminal court's

jurisdiction, yet Defendant Hoffman continued to prosecute Plaintiff as if the criminal court

continued to maintain jurisdiction over Mr. Tillman.  (*Id.*, at ¶ 45).  Her continued prosecution of

Mr. Tillman, despite her knowledge that proper identification evidence was not presented to the

grand jury, is not protected by absolute prosecutorial immunity because she lacked jurisdiction to

continue the prosecution.  *See* 62 N.Y. at 106.  The Court, therefore, should not grant Defendant

Hoffman motion based on a purported absolute immunity defense.

## II.     The Magistrate Erred In Concluding That Defendants Did Not Falsify Any Evidence In Support Of The Criminal Prosecution Against Plaintiff.

A falsification of evidence claim[5] requires a plaintiff to prove that: (1) an

investigating official, (2) fabricated information, (3) likely to influence a jury's verdict, and

(4) forwarded it to prosecutors, the grand jury, trial jury, or court, which (5) resulted in a

deprivation of the plaintiff's life, liberty, or property.  *See Garnett v. Undercover Officer C0039*,

838 F.3d 265, 279 (2d Cir. 2016) (citing *Riccuiti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130

(2d Cir. 1997)); *see also Zahrey*, 221 F.3d at 355-57 (2d Cir. 2000) (holding the same standard

applies to prosecutors acting in an investigatory capacity); *Morse v. Fusto*, 804 F.3d 538, 547-48

(2d Cir. 2015) (same).

The Second Circuit explicitly has recognized a constitutional "right not to be

deprived of liberty as a result of the fabrication of evidence by a government officer acting in an

investigating capacity." *Zahrey*, 221 F.3d at 344.  Subsequently, the Court explained that

evidence may be fabricated not just through use of false statements, but also through "omissions

---

[5] The falsification of evidence claim also is referred to as a denial of fair trial claim. *Jones v. City of New York*, No. 12-CV-3658, 2013 WL 6047567, at *1 (E.D.N.Y. Nov. 14, 2013).

that are both material and made knowingly." *Morse v. Fusto*, 804 F.3d 538, 547 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 126 (2016).

In *Morse*, the defendants suspected that plaintiff, a dentist with a practice in Brooklyn, New York, was perpetrating fraud by submitting false billing to Medicaid. *See* 804 F.3d at 541. During the course of their investigation, the defendants, who consisted of a prosecutor and law enforcement officer, conducted an audit of the plaintiff's billings and created spreadsheet summary charts containing the billing details of eight of his patients. *Id.* Those charts were then presented to a grand jury, and based in part on that evidence the plaintiff was indicted by the grand jury on the fraud charges. *Id.* In his complaint, he alleged that the defendants deprived of his constitutional right to a fair trial by manipulating the information contained on the spreadsheet summary charts before they were presented to the grand jury in order to create the false impression that the plaintiff billed Medicaid for dental services that he did not provide. *Id.* In that case, the Second Circuit reaffirmed its prior precedent establishing that "everyone possesses the additional and distinct 'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity.'" *Id.*, at 548 (citing *Zahrey*, 221 F.3d at 349). It then found that plaintiff's right was violated "when defendants knowingly created false or misleading billing summaries that were determined to be material to the grand jury's decision to indict." *Id.*

Similar to that case, here the complaint alleges at least a plausible basis that Defendants "knowingly created false or misleading [identification evidence] that was determined to be material to the grand jury's decision to indict." *Morse*, 804 F.3d at 548. Specifically, before asking Officer Earp to identify the three suspects in the surveillance video, Defendant Hoffman stated, *"[a]nd knowing these three individuals* . . . . are you able to identify who

different people are and what they're doing?" (Dkt. 1, at ¶ 23) (emphasis added).  Defendant

Hoffman, however, did not ask the officer *a single question* about whether he knows or could

recognize Plaintiff.  As alleged in the complaint, she did not ask these questions because

Defendant Hoffman knew that the Officers did not know, and therefore could not identify,

Mr. Tillman.  (Dkt. 1, at ¶¶ 24-26).[6]  She also knew that non-hearsay identification evidence was

critical to indict Plaintiff, and she did not want to jeopardize Defendants' chance at obtaining an

indictment by informing the grand jury of this critical fact.  (*Id.*)

Moreover, regarding the liability of Officers Earp and Bosi for Plaintiff's

falsification of evidence claim, this case and the circumstances it presents brings it within the

ambit of *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010).  In that case, the Second

Circuit affirmed a verdict against a police officer who "gave testimony that *was false or*

*contained material omissions*," while knowing that he "was making a material misrepresentation

or omission or giving false testimony."  *Id.* at 159 (internal quotation marks omitted, emphasis

added).  Therefore, the *Manganiello* Court acknowledged that the integrity of the judicial process

can be unlawfully compromised by a government official's submission of information to a jury

that implicates the accused in part based on material omissions.  *Id.*  Here, that material omission

was that not one witness presented to the grand jury could identify Mr. Tillman as one of the

shooters in the surveillance video.

Officers Earp and Bosi were not innocent bystanders in Defendant Hoffman's

deception—they were active participants.  Dismissal, therefore, would be inappropriate because

---

[6] Even if the Court does not agree that Defendant Hoffman manufactured identification evidence against Plaintiff at the grand jury hearing, the complaint alleges that she falsely represented to the criminal court on multiple occasions that Officer Earp personally knew, and therefore could identify, Mr. Tillman as one of the shooters in the video. (Dkt. 1, at ¶¶ 47, 49-50).  Each misrepresentation to the criminal court gives rise to a separate and distinct claim for fabricated evidence.

Officers Earp and Bosi knew, or should have known, that they cannot provide misleading testimony to a grand jury that implies they can identify Mr. Tillman when in fact they could not and were testifying on the basis of what allegedly was said by others. For Officer Earp, he knowingly created false evidence when he testified in a way that gave grand jurors the impression that he was one of the unidentified "officers that could identify" Mr. Tillman in the surveillance video, and when he testified at length as if he knew the three suspects and therefore could identify Mr. Tillman as one of the three shooters in the video. (Dkt. 1, at ¶¶ 21-28). For Officer Bosi, he testified that Mr. Mulkey identified Plaintiff as one of the shooters even though he knew his questioning of Mulkey without legal representation was improper and therefore could not be used as evidence against Mr. Tillman. In fact, a *Huntley* hearing was held regarding the recorded statement of Mulkey, which resulted in the criminal court suppressing the oral statement obtained by Officer Bosi because it was obtained in violation of Mulkey's right to counsel. (*Id.*, at ¶ 52). Additionally, although the R&R found that Officer Bosi's grand jury testimony was an accurate reflection of what Mulkey told the Officer during the interrogation, Plaintiff disputes the Magistrate's finding as a review of the recorded interrogation demonstrates that Mulkey did not make a free and voluntary statement at any time identifying Mr. Tillman as one of the shooters; rather, he merely repeated or agreed with statements by Officer Bosi, who repeatedly identified Plaintiff as a shooter during the interrogation despite Mulkey's persistent assertions that Mr. Tillman was not present at the scene of the shooting. (Dkt. 1-1, Exhibit B).

The complaint alleges that, during her meeting with Officer Bosi, Defendant Hoffman conspired with the Officer to present Mulkey's alleged identification of Mr. Tillman as a shooter in the Players Club gunfight, despite her knowledge that Mulkey's statements were not freely and voluntarily given and obtained in violation of his right to counsel. (*Id.*, at ¶¶ 26, 30-

31).  It further alleges that Defendants Hoffman and Bosi both knew that it was improper to

present Mulkey's alleged identification of Mr. Tillman as one of the shooters through the

testimony of Officer Bosi, yet both Defendants agreed to present the Mulkey identification as

evidence against Plaintiff despite their knowledge of the impropriety of such evidence.  (*Id.*)

Simply put, if Defendants Hoffman and Bosi believed that Mulkey truly identified Mr. Tillman

as one of the shooters, then they would have either played the recorded interrogation for the

grand jury or presented Mulkey as a witness to identify Plaintiff.  They did not, however, and

this case should proceed to discovery to determine why that is the case because it appears they

knowingly violated Mr. Tillman's right to a fair trial.


III.    **The Magistrate Erred In Finding the Complaint's Allegations**
        **<u>Do Not Allege Personal Involvement by Officers Earp and Bosi.</u>**

        The complaint includes a plethora of allegations supporting the personal

involvement of Officers Earp and Bosi.  Initially, the complaint alleges that Officers Bosi and

Earp were both assigned by NFPD to investigate the Players Bar shooting, and as part of that

investigation they reviewed surveillance videos that captured the gunfight.  (*Id.*, at ¶¶ 10-13).

Defendants claim, and Plaintiff disputes, that Mr. Tillman's parole officer, Brian Bailey,

identified Plaintiff as one of the shooters depicted in the video.  (*See id.*)  Based on Mr. Bailey's

alleged identification of Mr. Tillman, Officer Earp filed criminal charges against Plaintiff for

reckless endangerment and criminal possession of a weapon.  (*Id.*)

        While preparing for the grand jury hearing, however, Officers Earp and Bosi

learned that Mr. Bailey could not identify Plaintiff as one of the shooters in the video under the

penalty of perjury.  Thus, when Officers Earp and Bosi met with Defendant Hoffman for the

investigative, pre-grand jury meeting, the Officers informed her of a very serious problem with

their investigation and prosecution of Mr. Tillman—no one could identify him as a suspect. (*Id.*, at ¶¶ 25-26). Defendant Hoffman advised the Officers during the investigative meetings on how to provide false identification evidence implying that they or other third parties could identify Mr. Tillman as one of the shooters in the video. (*Id.*, at ¶¶ 26, 29-31). Officers Earp and Bosi then testified at the grand jury hearing in a way that gave the impression that they were the unidentified officers who knew and therefore could properly identify Tillman. (*Id.*, at ¶¶ 21-31).

As explained above, these allegations are sufficient to demonstrate the personal involvement of Officers Earp and Bosi for Plaintiff's falsification of evidence claim. (*See* Point II, supra). Moreover, because the complaint plausibly alleges that Officers Earp and Bosi both presented false testimony to the grand jury with knowledge of its falsity, the fact that the Officers initiated the prosecution against Mr. Tillman by filing accusatory instruments against him is sufficient to support their personal involvement for Plaintiff's malicious prosecution claim. *See, e.g., Bermudez v. City of New York*, 790 F.3d 368, 374 (2d Cir. 2015) (finding it is well settled in this Circuit that courts should not consider the chain of causation broken where the police officer filed the criminal complaint and knows the prosecution is based on false evidence); *Myers v. County of* Orange, 157 F.3d 66, 73-74 (2d Cir. 1998); *Zahrey v. City of New York*, No. 08-CV-9546, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009). Further, based on the criminal charges filed by the Officers, Mr. Tillman was arrested on July 17, 2019 and held at the Niagara County Jail until November 30, 2020 when the charges were dismissed. (Dkt. 1, at ¶¶ 17-18). These allegations are sufficient to support Plaintiff's false imprisonment claim against Officers Earp and Bosi as personal involvement may be shown where it is alleged that a defendant "instigated" an individual's arrest or prosecution that leads to the imprisonment. *See, e.g., Rateau v. City of*

*New York*, No. 06-CV-4751, 2009 WL 3148765, at *6 (E.D.N.Y. Sept. 29, 2009), *aff'd*, 593 F.3d 196 (2d Cir. 2010), *cert den.*, 131 S. Ct. 444 (2010)).

       Here, Officers Earp and Bosi intended to confine Plaintiff, and the complaint sets forth a plausible basis that Defendants conspired to pursue criminal charges against Mr. Tillman without proper evidence to identify Plaintiff as one of the shooters in the video. As co-conspirators, Defendants are "liable, in civil as in criminal law, for the wrongful acts of other conspirators committed within the scope of the conspiracy." *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002); *see also United States v. Eisen*, 974 F.2d 246, 268 (2d Cir. 1992) ("the basic principle" governing conspiracies is "that conspirators are generally held liable for the known or reasonably foreseeable acts of all other co-conspirators committed in furtherance of the conspiracy"). Indeed, as one court has explained, "once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action . . . so long as the purpose of the tortious action was to advance the overall object of the conspiracy." *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).

       Therefore, because Officers Earp and Bosi intended to confine Mr. Tillman by any means necessary, their actions in furtherance of that goal render them liable for Mr. Tillman's time in jail, even if they personally did not confine him or tell Defendant Hoffman to lie to the criminal court and state that Officer Earp knew and could identify Plaintiff when she knew full well that he could not. That is because his incarceration and the continued prosecution against Mr. Tillman were foreseeable consequences of their initiation of the criminal charges and by providing false evidence to identify Plaintiff as one of the shooters. *See, e.g., Higazy v.*

*Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (concluding that section 1983 defendants "are responsible for the 'natural consequences' of their actions"). Accordingly, the Court should find that the allegations in the complaint are sufficient to meet the plausibility standard required to defeat the Officers' motion, and allow Plaintiff's claims against Officers Earp and Bosi to proceed to discovery.

### IV.     The Magistrate Erred in Concluding that the Plaintiff's Imprisonment and Prosecution Both Were Supported by Probable Cause.

In his R&R, the Magistrate concluded that "probable cause existed to charge and arrest the plaintiff," and therefore dismissed Plaintiff's malicious prosecution and false imprisonment claims. (*See* Dkt. 26, at pp. 25-27). Respectfully, this finding was based on a misunderstanding of Plaintiff's argument regarding the lack of probable cause supporting his imprisonment or prosecution after January 17, 2020. (Dkt. 1, at ¶¶ 60-63, 69-71).

Initially, probable cause to arrest does not automatically persist throughout the criminal proceedings. *See, e.g., Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996); *Jovanovic v. City of New York*, No. 04-CV-8437, 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006) ("[p]robable cause to arrest cannot be a springboard for probable cause to prosecute"). It can dissipate when the groundless nature of the prosecution is revealed, and at that point if the prosecution continues the defendant may be held liable. *See, e.g., Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 208 (E.D.N.Y. 2014) (holding that probable cause was "vitiated" by exculpatory evidence subsequently learned by officer-in-charge of plaintiff's arrest and concluding that the officer could be held liable for malicious prosecution).

Here, the complaint acknowledges that, if true, Brian Bailey's alleged identification of Mr. Tillman as one of the shooters in the video is sufficient to show probable

cause for the criminal charges.  However, once Mr. Bailey informed Defendants that he could not identify Plaintiff under the penalty of perjury, Defendants knew that they could not secure an indictment of Mr. Tillman without another witness who could provide non-hearsay identification evidence supporting Plaintiff's involvement as a shooter.  Defendants also knew that six months after the felony criminal charges were filed, CPL § 30.30 *required* dismissal of the charges on speedy trial grounds if a proper indictment was not secured. (Dkt. 1, at ¶¶ 57-63).  Although the Magistrate discounted these allegations by referring to the failure to obtain a properly supported indictment as a "procedural rule" rather than a "fact," it is not readily clear what legal significance this distinction has, and the R&R does not cite any decision from another court where the distinction between an intervening procedural rule and fact was dispositive for determining whether probable cause persisted throughout the prosecution and imprisonment of Plaintiff.  (Dkt. 26, at pp. 26-27).

Moreover, adopting the Magistrate's recommendation to find such a distinction legally dispositive is contrary to Second Circuit precedent that states it is the "groundless nature of the charge [that] must be made apparent" to conclude that probable cause has dissipated and a malicious prosecution and false imprisonment claim may begin.  *See Lowth*, 82 F.3d at 571.  As explained above, a proper indictment secured with non-hearsay identification evidence is critical to secure and maintain a criminal court's jurisdiction over the criminal charges.  *See Pelchat*, 62 N.Y.2d at 106 (holding that an indictment provides the statutory "predicate for the court's jurisdiction").  Once six months expired and Defendants could no longer obtain a proper indictment against Plaintiff, Defendants necessarily *knew* that the criminal court no longer possessed jurisdiction over Mr. Tillman and therefore the "groundless nature" of the charges became "apparent."  Thus, assuming that this Court finds that Defendants had sufficient probable

cause to arrest and charge Mr. Tillman based on the alleged identification by Mr. Bailey, the same cannot be said with regard to Defendants' continued prosecution despite their knowledge of the criminal court's lack of jurisdiction over the criminal charges. *See Lowth*, 82 F.3d at 573.

## V.       The Magistrate Erred in Concluding that Officers Earp and Bosi are Entitled to Qualified Immunity.

The Magistrate in his R&R refused to label the identification testimony of Officers Earp and Bosi as false, but in reality that is exactly what the Officers' testimony was. The Officers knew that they were misleading the grand jury into believing that there was any basis for identifying Mr. Tillman as a shooter—other than third-party allegations of individuals who did not testify at the grand jury hearing.  Officers Earp and Bosi knew, or should have known, that they were not entitled to provide testimony intended to mislead a grand jury regarding the identification of a suspect.  Nevertheless, the R&R makes the erroneous finding that "Bosi and Earp are entitled to qualified immunity because 'it was objectively reasonable for them to believe that [their] conduct did not violate a clearly established right.'"  (Dkt. 26, at p. 30, citing *Manganiello*, 612 F.3d at 165).

By falsely testifying that they could identify Mr. Tillman, Officers Earp and Bosi both knew that the were violating clearly established law that prohibited them from misleading the grand jurors by presenting false evidence necessary to secure an indictment for an otherwise unsolvable crime. *See Buckley*, 509 U.S. at 275; *Morse*, 804 F.3d at 541-48.  While holding him in custody on the jurisdictionally defective indictment, Officers Earp and Bosi, through Defendant Hoffman, repeatedly tried to get Mr. Tillman to accept a plea deal requiring him to plead guilty and do substantial jail time.  As explained by the Second Circuit in *Morse*, where the

plaintiff alleges that the law enforcement officer assisted by preparing false information to present to a grand jury where the officer knows the "evidence [i]s material to the grand jury's decision to indict," the defendant officer will not be protected by qualified immunity. *Morse*, 804 F.3d at 543, 548.

Thus, because the complaint's allegations set forth at least a plausible basis that Defendants compromised the integrity of the judicial process by knowingly submitting false evidence or information to the grand jury that Plaintiff could be identified with non-hearsay identification evidence. The omitted information regarding Defendants' lack of personal knowledge of Mr. Tillman at the grand jury hearing was critical to the grand jury's decision to indict, as the failure to provide non-hearsay identification evidence was a jurisdictional defect. (*See* supra). The Second Circuit repeatedly has held that, in similar circumstances, police officers and prosecutors alike are not entitled to qualified immunity. *See, e.g., Morse*, 804 F.3d at 548; *Riccuiti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (denying qualified immunity to police officers where a reasonable jury could find they "violated the plaintiff's clearly established constitutional rights by conspiring to fabricate an forward to prosecutors a known false confession almost certain to influence a jury's verdict"). Accordingly, the Court should find that Defendants' attempt to dismiss Plaintiff's claims based on qualified immunity is premature and should await discovery.

## **CONCLUSION**

For the reasons stated above, it respectfully is submitted that the Court should reject, or, in the alternative modify, the Magistrate's R&R, and grant to Plaintiff any and all other relief that the Court deems just and proper.

Dated: October 28, 2022
       Buffalo, New York

                    **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                    *Attorneys for Plaintiff*

                    By:          *s/Chad A. Davenport*
                               R. Anthony Rupp III
                             Chad A. Davenport
                         1600 Liberty Building
                         Buffalo, New York 14202
                         (716) 854-3400

4875-0769-9512, v. 1

-24-