```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK


GARRIEN F. TILLMAN,              *           Docket Number:
                                             21-CV-01269-JLS-JJM
                                *
Plaintiff,                      *
                                *
                                *           Buffalo, New York
                v.              *           May 18, 2022
                                *           11:30 a.m.
                                *
DOREEN M. HOFFMAN,                          ORAL ARGUMENT
individually and in her
capacity as an assistant
district attorney for
Niagara County,
TROY EARP,
Individually and in his
capacity as a detective for
the Niagara Falls Police
Department,
SHAWN BOSI,
Individually and in his
capacity as a detective for
the Niagara Falls Police
Department.                      *
                                *
Defendants.                     *
                                *
*  *  *  *  *  *  *  *  *  *  *  *  *  *


                 TRANSCRIPT OF FTR PROCEEDINGS
         BEFORE THE HONORABLE JEREMIAH J. McCARTHY
              UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For the Plaintiff:          RUPP PFALZGRAF, LLC.,
                            By CHAD A. DAVENPORT, ESQ.,
                              A. ANTHONY RUPP, III, ESQ.,
                            1600 Liberty Building,
                            424 Main Street,
                            Buffalo, New York  14202.
```

```
 1   For Defendant Hoffman:        GIBSON McASKILL & CROSBY, LLP.,
                                   By BRIAN P. CROSBY, ESQ.,
 2                                 69 Delaware Avenue
                                   Suite 900,
 3                                 Buffalo, New York  14202.

 4
     For Defendants Earp
 5   And Bosi:                     WALSH, ROBERTS & GRACE,
                                   By KEITH N. BOND, ESQ.,
 6                                 400 Rand Building,
                                   14 Lafayette Street,
 7                                 Buffalo, New York  14203.

 8
     The Courtroom Deputy:         ERIC T. GLYNN
 9

10   Court Reporter/Transcriber:
                                   BONNIE S. WEBER,
11                                 Notary Public,
                                   Robert H. Jackson Courthouse,
12                                 2 Niagara Square,
                                   Buffalo, New York  14202,
13                                 Bonnie_Weber@nywd.uscourts.gov.

14

15              Proceedings recorded by FTR Gold,
                 transcript produced by computer.

16

17           (Proceedings commenced at 11:30 a.m.)

18

19           THE CLERK:  All rise.

20           THE COURT:  Good morning.

21           THE CLERK:  We are on the record in civil proceeding

22   21-CV-1269, Tillman v. Hoffman, et al, for oral argument on

23   defendants' motion to dismiss.

24           Present in the courtroom are plaintiff, with attorneys

25   Anthony Rupp and Chad Davenport.
```

1          Attorney Brian Crosby for defendant Hoffman and

2    Attorney Keith Bond by telephone for defendants Earp and Bosi.

3    The Honorable Jeremiah J. McCarthy presiding.

4          **THE COURT:**  Good morning, again, everyone.

5          **MR. RUPP:**  Good morning, Judge.

6          **MR. CROSBY:**  Good morning.

7          **THE COURT:**  And I thank you all for accommodating last

8    minute rescheduling.

9          Mr. Bond, can you hear me all right?

10         **MR. BOND:**  Yes, Judge.  I'm in my last day of COVID

11   quarentine, so I apologize for not being there in person.

12         **THE COURT:**  No problem.  We're kind of glad you're not

13   here under those circumstances, but I hope you're doing well.

14         **MR. BOND:**  Understood.

15         **THE COURT:**  Okay.  I have reviewed the papers on the

16   motions to dismiss and I will be reviewing them again, but I

17   think you can assume I'm fairly familiar with the issues.

18         And when you argue, you -- you can either remain at

19   counsel table or you can come to the podium, whichever you

20   prefer.

21         Before we get into the details, though, I just have a

22   couple questions.  One of which, I guess, doesn't directly

23   relate to the motions, but I'm just curious; in Federal Court,

24   at least, Grand Jury proceedings are highly confidential.

25         And I'm wondering, how did you get access to the

1   transcript of the Grand Jury proceedings?  Maybe there is a

2   different rule in State court.

3          **MR. RUPP:**  Judge, that predated our arrival in the

4   case, as it were.  That all played out in the resolution of the

5   criminal charges against Mr. Tillman.

6          So, possibly, the best person to answer that question

7   would be my client, who is right here.

8          **THE COURT:**  He was nodding, so --

9          **MR. RUPP:**  Yeah.  Ian Harrington and Tommy Eoannou,

10  you know, I think had those.

11         And -- and I know that as part of the judge's function

12  in a criminal proceeding, he reviewed the Grand Jury minutes or

13  delegated somebody to review them, so --

14         **THE COURT:**  Again, have --

15         **MR. RUPP:**  -- I -- I think they are --

16         **THE COURT:**  Again, as I said, it doesn't relate to the

17  motions, but I -- I was just wondering, you know.

18         **MR. RUPP:**  I think they are just generally more

19  available and accessible --

20         **THE COURT:**  Okay.  All right.

21         **MR. RUPP:**  -- for these -- these issues.

22         **THE COURT:**  Okay.  Okay.  All right.  Well, with that,

23  I guess, I will hear from counsel.

24         Mr. Crosby, you can lead off.

25         **MR. CROSBY:**  Thank you, Your Honor.  I'll be very

1    brief, because I think all of our issues have been laid out

2    fairly well in our motion papers in our follow-up, in our

3    response to plaintiff.

4         Essentially, we represent the assistant District

5    Attorney Hoffman, who prosecuted the case.

6         The allegations here, in our view, all fall -- whether

7    they are correct or not, giving plaintiff the benefit of the

8    doubt, the best light, in favor of plaintiffs, they all occur

9    during the time of prosecution of the case.

10        The -- there is no allegation that the Assistant

11   District Attorney was involved in the initial arrest --

12        **THE COURT:**  Well, now --

13        **MR. CROSBY:**  -- or the investigation.

14        **THE COURT:**  They -- they claim that part of her

15   function was in investigating, as opposed to prosecuting.

16        And what's your response to that?

17        **MR. CROSBY:**  My response to that is there is no

18   evidence of that.  The underlying incident occurred on June 18,

19   2019.

20        The felony complaint was filed by the investigating

21   police officers on -- in July of 2019.  The supporting

22   deposition in bringing those charges was issued on July 17,

23   2019.

24        There is no participation by the Assistant District

25   Attorney with the investigating police officers, until the

1   matter is going before the Grand Jury, some months later, in

2   October of 2019.

3          Once it occurs, and in going through the complaint,

4   the allegations are essentially that there was some conspiracy

5   between the two investigating officers and the Assistant

6   District Attorney with regard to the identification of the

7   plaintiff.

8          That clearly falls within the ambit of prosecutorial

9   practice and the --

10         **THE COURT:**  Let -- let --

11         **MR. CROSBY:**  -- the presentation of the case.

12         **THE COURT:**  I just want to make sure I understand

13  what's at issue and what's not at issue.

14         I believe -- Mr. Rupp and Mr. Davenport, do you agree

15  that official capacity claims against Ms. Hoffman are by

16  immunity?

17         **MR. RUPP:**  Yes, Your Honor.

18         **THE COURT:**  Okay.

19         **MR. DAVENPORT:**  Yes, Your Honor.

20         **THE COURT:**  Okay.

21         **MR. RUPP:**  11th Amendment.

22         **THE COURT:**  Okay.

23         Go ahead, Mr. Crosby.

24         **MR. CROSBY:**  We believe that everything set out in the

25  complaint falls within the prosecutorial practice.

1          Whether it is right or wrong, we've cited the cases

2     that say there is absolute immunity for the Assistant District

3     Attorney.

4          There is no indication of any participation in the

5     papers of the Assistant District Attorney, before the matter

6     comes to the Grand Jury.  It's as simple as that.

7          **THE COURT:**  Okay.  I'll -- well, Mr. Bond, I'm going

8     to hear from Mr. Rupp and/or Mr. Davenport first on Ms. Hoffman,

9     the claim as to Ms. Hoffman, and then we'll come back to you and

10    you can argue as to defendants Earp and Bosi and -- okay.

11         So you're --

12         **MR. BOND:**  Okay.  Thank you, Judge.

13         **THE COURT:**  All right.  So you're doing a little cross

14    rough here?  Coming over to this side as opposed to that side?

15         **MR. RUPP:**  I didn't even know.

16         **THE COURT:**  Well, it's all right.  All right.  It

17    doesn't matter.

18         **MR. RUPP:**  I didn't notice this one, Judge, I'll come

19    over.

20         **THE COURT:**  I didn't know if you were, you know,

21    relying --

22         **MR. RUPP:**  You are bilateral in this courtroom.  I

23    didn't realize that, so --

24         **THE COURT:**  Okay.  All right.

25         **MR. RUPP:**  Judge, may it please the Court and good

1  morning.

2        Again, the doctrine of absolute immunity or the

3  absences of ADA Hoffman in her personal capacity is to be quite

4  sparingly applied.  That's well known Supreme Court precedent.

5        Usually, these types of claims for defendant on

6  qualified immunity, because the absolute immunity is not to be

7  applied as a blanket, as Mr. Crosby suggests.

8        There are a couple of reasons why there is no absolute

9  immunity here.  First and foremost, there is no absolute

10  immunity for a prosecutor who prosecutes a defendant knowing

11  that there is no jurisdiction over that defendant.

12        And that includes -- and I cite the Pelchat case for

13  that, which wasn't admittedly a Section 1983 case, but it's a

14  New York Court of Appeals case.

15        Saying that in that case, the prosecutors knew that

16  they did not have identification of the criminal defendant and

17  they proceeded to prosecute him anyway, all the way until they

18  had him take a plea.

19        In fact, the Pelchat posture was that Mr. Pelchat was

20  seeking to revoke his own plea to challenge the Grand Jury

21  indictment.

22        **THE COURT:**  But is your claim that she knew, because

23  he apparently was identified by his parole officer from the

24  tape.

25        **MR. RUPP:**  Judge, we don't know that.  And -- and one

1  of the issues here that's going to come up, especially on the

2  qualified immunity, is our right to discovery to clear that up.

3         We know that after Ms. Hoffman presented the testimony

4  that we believe, you know, was perjured and falsified of

5  Detective Earp on the first day of the Grand Jury proceeding,

6  which was October 22nd -- I'm sorry, yes, October 18th of 2019,

7  we know that she went out four days later and prepared an

8  affidavit for the parole officer, whom she had identified to the

9  Grand Jury as someone she was going to call to testify.

10        Which to us suggests that she knew that detectives

11  Earp and Bosi could not provide the all-important and

12  Constitutionally required non-hearsay identification of my

13  client, Garrien Tillman.

14        So she put Earp on the stand.  And I know Your Honor

15  is familiar with what he testified to and what he said.  And our

16  concern with this, knowing these individuals lying, that she

17  used to transition as if he had personal knowledge --

18        **THE COURT:**  Okay.  Let me -- and let me interrupt.  Do

19  we all agree -- because as you all know, my involvement with

20  Grand Juries is very limited in terms of I usually don't find

21  out, nor does the Court find out what went on, other than they

22  either indicted or they didn't.

23        But do we all agree that an indictment cannot be based

24  only on hearsay evidence?

25        **MR. RUPP:**  I certainly agree with that, Your Honor.

1      **THE COURT:** Mr. Crosby?

2      **MR. CROSBY:** Yes.

3      **THE COURT:** You agree? All right.

4      **MR. RUPP:** So, Judge --

5      **MR. BOND:** Yes, Your Honor.

6      **MR. RUPP:** We know.

7      **THE COURT:** All right. Thanks, Mr. Bond.

8      All right.

9      **MR. RUPP:** We know, Your Honor, from her actions that

10     Doreen Hoffman knew that the -- Detective Earp's testimony

11     concerning the identification of Mr. Tillman was insufficient.

12     And we also believe and we've alleged on information

13     and belief that she knew that the Mulvey statement taken by

14     taken by Detective Bosi, also, was not a non-hearsay

15     identification.

16     That he didn't actually identify Tillman as the

17     shooter. And we put that in the complaint verbatim, because we

18     think that's important.

19     Also important is the fact that that statement from

20     Mulvey was ultimately suppressed, as part of his criminal

21     prosecution.

22     And how do we know that she knew that those two forms

23     of identification were insufficient?

24     **THE COURT:** Well, but what Mulvey's statement, being

25     suppressed, your client take it -- doesn't have standing to

1    challenge whether or not Mulvey's statement was taken with or

2    without proper warrants, right?

3          **MR. RUPP:**  Admittedly, Judge.  And it was after the

4    fact.  It was -- his statement was suppressed long after

5    Mr. Tillman, I think, was even out of jail.

6          **THE COURT:**  Okay.

7          **MR. RUPP:**  But there are two reasons why the Mulvey

8    statement couldn't have been relied on by ADA Hoffman.

9          One is that it itself was hearsay.  Mulvey wasn't

10   called to testify before the Grand Jury.  Detective Bosi was

11   called to testify to what Mulvey said.  That's number one.

12         It right away it is impermissibly -- it's

13   impermissible Constitutionally to identify Mr. Tillman.

14         But number two, Judge, the Mulvey statement, which we

15   reproduced for the Court in the complaint verbatim for this very

16   point, he does not ever identify Garrien Tillman as his shooter,

17   as it were.

18         It is all nonsense.  Detective Bosi never got him to

19   say:  Yeah.  Tillman was the shooter.

20         Detective Bosi sat there and told him over and over:

21   Tillman shot you, didn't he?  Tillman shot you.

22         And Mulvey repeatedly said Tillman wasn't there.

23   That's not it.  And, you know, they just transmogrified that

24   into hearsay identification testimony, when it was -- when it

25   was not.

1        So the Mulvey statement couldn't have done it.  We've

2   alleged and pled -- and I know Your Honor has read all the

3   papers, so I won't dwell on this, we've alleged that the Earp

4   statement was not sufficient to provide the all-important

5   non-hearsay identification of Tillman.

6        So what does ADA Hoffman do after presenting those to

7   detectives, she went out and she prepared the affidavit of whom

8   Brian Bailey, the parole officer, whom she knew from her

9   investigatory pre indictment pre Grand Jury meetings with

10  detectives Bosi and Earp, she needed to have and whom she had

11  introduced to the Grand Jury as someone who she was going to

12  call.

13       She went out four days after presenting Earp's

14  testimony and drafted an affidavit.  We know that, because it's

15  timestamped and date stamped.

16       She never got it signed.  She never -- we don't know,

17  Judge.  And this goes to the question of whether we're allowed

18  to go forward in this case to -- to gather discovery.

19       We want to know -- we don't even know that Bailey

20  actually did identify Garrien Tillman.

21       All we have on that is Earp testifying to it via

22  hearsay and Doreen Hoffman representing it to the trial court,

23  also as hearsay.

24       The affidavit never was signed.  The Grand Jury

25  testimony of Bailey never was presented.

1          All of that, Your Honor, not to mention numerous other

2    court appearances where Ms. Hoffman played coy with the Court

3    about the identification issue, which Mr. Tillman had raised

4    every single time he went to court from the moment that Grand

5    Jury indictment was --

6          (Alarm interruption.)

7          **MR. BOND:**  Hello?

8          **MR. RUPP:**  We're still here, Keith.

9          **THE COURT:**  Keith?

10         **MR. BOND:**  Okay.  Now, I can hear you.  You blocked

11   out for a minute.

12         **THE COURT:**  Okay.  I don't know what that was, folks,

13   but I think we can ignore it.

14         **MR. RUPP:**  Judge --

15         **THE COURT:**  Let me -- I just wanted to go to a

16   paragraph in the complaint.

17         **MR. RUPP:**  Sure.

18         **THE COURT:**  Zero me in on the dismissal of the

19   indictment.  I think it was --

20         **MR. RUPP:**  Judge Kloch.

21         **THE COURT:**  Yeah.  But paragraph 49, I guess, at page

22   16 of the complaint, it says:  Right before the Court was ready

23   to call the case, defendant Hoffman finally relented and agreed

24   that the identification of Mr. Tillman was based on

25   impermissible hearsay.  The Court then dismissed the indictment.

1        Okay.  So your allegation is that up until that point,

2   she -- she didn't come clean on that issue?

3        **MR. RUPP:**  Right, Judge.  And here's what I can

4   represent to the Court:  I have reviewed the transcripts of the

5   proceedings before Judge Kloch.

6        They are not attached to the papers, but they are

7   going to form part of the discovery in this case, should Your

8   Honor allow us to go forward into discovery.

9        Ms. Hoffman engaged in a pattern and a practice of

10   deceit to avoid the issue that Mr. Tillman had raised at every

11   single court appearance about the non-hearsay identification of

12   him that was lacking in this case.

13        She did everything to do what I call a -- you know, a

14   Jedi mind trick:  "This is not the issue you want to look at

15   Judge Kloch.  You've already looked at those Grand Jury meeting

16   minutes."

17        Mr. Tillman, and then later joined by Ian Harrington

18   had brought motions seeking to suppress or have the indictment

19   vacated on those very grounds.

20        And she went right up to the day of the Rodriguez

21   hearing pretending that she was going to call Detective Earp.

22        And so the Rodriguez hearing, Your Honor, is not

23   actually a fix for what happened in the Grand Jury.  It's really

24   the wrong mechanism.

25        Judge Kloch was actually giving the DA a chance here

1    to call Earp and have him, essentially, supplement to the

2    Court's satisfaction that he could make the identification of

3    Tillman.

4         So it's really what the judge should have done is

5    looked at the Grand Jury meeting minutes, which any judge could

6    do, and any attorney could do, and see that there was no

7    non-hearsay identification of Tillman.

8         It's patently obvious that nobody identified Tillman

9    at all and anybody who tried to was doing it from hearsay.

10        **THE COURT:**  And we don't -- we don't know at this

11   stage -- well, maybe somebody knows, but at least from your

12   standpoint, you don't know why Bailey was never called, right?

13        **MR. RUPP:**  I really want to know that, Judge.  It's a

14   critical question I wanted to pose to the man and I wanted to

15   pose to Doreen Hoffman.

16        And I want to find out why four days after she

17   presented Earp and after telling the Grand Jury she was going to

18   call Bailey, which to me is the mind that tells me that she knew

19   she had to call Bailey and she didn't do it.

20        **THE COURT:**  So -- so back to immunity for a minute.

21   This whole purpose -- for the purposes of qualified immunity, it

22   doesn't matter whether there was malicious or, excuse me, for

23   absolute immunity.

24        It didn't matter whether there was malicious intent or

25   anything --

1          **MR. RUPP:**  But --

2          **THE COURT:**  -- but you're saying for qualified

3  immunity, it does?

4          **MR. RUPP:**  Well, that's right, Judge.  Absolute

5  immunity.

6          But not only do we have the absolute immunity for her

7  having the lack of jurisdiction -- so when you have an empty

8  indictment, under CPL 3030, you know, New York's criminal speedy

9  trial statute, 30 day -- sorry, six months after Mr. Tillman was

10 first arrested and incarcerated and deprived of his liberty,

11 they had to carry out and have a proper indictment.

12         And the indictment that she got, she knew was an empty

13 indictment.  Mr. Tillman -- actually, before the six months ran

14 out, Judge -- this is the thing that I find ironic -- before the

15 six months ran out, he had repeatedly -- and I can give you the

16 dates in -- well, he had repeatedly argued that the indictment

17 was an empty one.

18         That he was -- there was a non-hearsay identification

19 of him.  ADA Hoffman had every ability at that point to pull out

20 the Grand Jury minutes, read them and say:  "Oh, my God, I

21 botched this," and seek a new indictment in front of a new Grand

22 Jury.

23         She didn't do that, Judge.  She fought it.  She did

24 the Jedi mind trick:  "This is not the issue you're looking for,

25 Judge.  You've already reviewed those Grand Jury meeting

1    minutes.  You don't have to look at them again."

2          And she let the six months run out.  And the

3    transcript of Judge Kloch, when he dismissed the indictment, she

4    said she tried to pass up a paperwork to resubmit it to the

5    Grand Jury.

6          He said:  Oh, no.  He says:  Oh, no.  You -- you're

7    well beyond your speedy trial here; your 3030 time frame.  You

8    can't resubmit this.

9          So she ran out the clock on the People's case against

10   my client, which I hope he doesn't mind me saying, but, if she

11   had simply looked at the Grand Jury meeting minutes, gone back

12   to her original decision to call Bailey and the affidavit that

13   she never presented and realized she had been caught, she could

14   have probably resubmit this.

15         If what was said about Bailey being a non-hearsay

16   identifier of Mr. Tillman as the shooter, she could have fixed

17   it.

18         She chose not to, Judge.  She chose appearance after

19   appearance, after appearance, after appearance to avoid the

20   issue.

21         Right up until the day of the Rodriguez hearing, when

22   everyone expected Detective Earp to take the stand and explain

23   how he suddenly could now identify Garrien Tillman, when he had

24   testified under oath that he couldn't.

25         And he had even put together a supporting deposition

1   affidavit as part of the criminal prosecution, that he wasn't

2   the identifier, she then stood down.

3          And she said:  Okay, Judge.  I'm -- I was bluffing.

4   I'm not going to actually call anybody.  And the judge said:

5   Well, if you're not calling anybody, I'm dismissing the

6   indictment.

7          And that's when she had her pre-prepared papers to try

8   to resubmit, but beyond the 3030 time.

9          So, Judge, we have a complete lack of jurisdiction

10  that we believe we have acknowledged on a motion to dismiss

11  standard in our pleadings that is more than sufficient

12  corroborating evidence to show that our complaint is not merely

13  conceivable, but it's plausible, which is the standard that the

14  Supreme Court has set out for pleadings.

15         That she knew that she prosecuted Mr. Tillman -- now,

16  she had the six months -- I'll give her for the sake of the

17  argument this morning, Judge, I'll give her that she had the

18  first six months under the CPL 3030 to secure a proper

19  indictment.

20         She knew she hadn't.  So six months to the day after

21  he was incarcerated, which would be -- the six months would run

22  on January 17th of 2020, she knew that everything -- every step

23  she took after that was prosecuting Mr. Tillman without

24  jurisdiction of the court.

25         The Supreme Court and the -- and the Court of Appeals

 1  in Pelchat said the Court lacks jurisdiction if there is no

 2  proper indictment.

 3          And this was an empty indictment.  We know Judge Kloch

 4  found -- found that.  I think Your Honor would find it, too, if

 5  that issue were before you.

 6          So she knew and we have alleged fact after fact after

 7  fact that she knew.  The Bailey affidavit, Judge, that Your

 8  Honor asked the question about that got me going on this, is

 9  critical evidence of her knowledge.

10          That she did not have that.  She lacked a non-hearsay

11  identification of Tillman.  Why she didn't call Bailey; why that

12  affidavit was never signed is information that is within the

13  exclusive control of Ms. Hoffman and the Niagara County District

14  Attorney's office, that, I would like the opportunity to explore

15  in discovery, so we can explain why she never fixed the hearsay

16  problem on the critical issue that the Pelchat Court of Appeals

17  said you cannot prosecute a criminal defendant in New York on a

18  hearsay identification.

19          And in this case, I don't even think she had even a

20  hearsay identification, because we're not sure what Bailey would

21  have said.

22          And we know what Mulvey said, and neither one of them

23  have indicated they would -- could identify Mr. Tillman, other

24  than ADA Hoffman's representations to that effect.

25          And forgive me if I say that I don't believe ADA

1    Hoffman, based on the way she behaved in this case.

2         So, Judge, on the issue of absolute immunity, which is

3    the only issue that Mr. Crosby went into -- absolute immunity

4    does not apply to fabrication of evidence.

5         We believe -- and we believe Pelchat, the Court of

6    Appeals case, supports the idea.  And so that was -- that was a

7    misidentification issue.

8         That was information where the police officer

9    testified that he had seen Mr. Pelchat carrying marijuana from a

10   boat into a house.

11        He had told -- he told the DA that:  "I actually

12   didn't see him do that."  And the Court of Appeals chastised the

13   prosecute there and said:  That's fabrication of evidence.  You

14   knew it and you continued to prosecute this man.

15        In fact, you prosecuted him all the way through to a

16   guilty plea, when the detective had come to you and said, I

17   can't say that I saw him do that.

18        So Mr. Pelchat was just in the house with a lot of

19   other people who had seen -- been seen carrying marijuana from

20   this boat.

21        **THE COURT:**  Okay.  Yeah.  I think I have your point.

22   Again, I'm going to be re-reviewing the papers.  I just want to

23   go back to Mr. Crosby for a moment.

24        Bearing in mind, you know, that this is a 12(b)(6)

25   motion, even on the issue of immunity, why -- why shouldn't it

1    at least proceed into some form of discovery?

2         **MR. CROSBY:**  Well, Your Honor, if we go back to the

3    affidavit that led to the charge that was filed by Detective

4    Earp, in that he clearly states -- and this is the entire basis

5    of going to the Grand Jury, that three shooters were identified.

6         The three shooters were identified by the police

7    officers that had encountered them, and one of them by his

8    parole officer.  That says to the Assistant District Attorney

9    that they have been identified.

10        He goes on to say:  During an interview with Detective

11   Bosi, Mulvey confirms that Julian Strait and Garrien Tillman

12   were shooting at him.

13        All three shooters were positively identified, as

14   previously stated.  So there is a basis for the Assistant

15   District Attorney to go to the Grand Jury.

16        The case law that we've cited to, Your Honor, is clear

17   that in Pinaud against the County of Suffolk, which was Second

18   Circuit 1995, held that District Attorneys that were absolutely

19   immune from any claim of malicious prosecution in presentation

20   of false evidence to a Grand Jury.

21        That's essentially what they are saying happened here.

22   She's entitled to absolute immunity, Your Honor.

23        **THE COURT:**  All right.

24        Counsel, I think on this aspect, I have your

25   positions.  And, again, I'm going to be re-reviewing the papers

1    and I'll get to it, but let's move forward now to hear from

2    Mr. Bond on behalf of defendants Earp and Bosi.

3              **MR. BOND:**  Yes, Judge.  Thank you.

4              Judge, just my remarks in part are going to refer to

5    ADA Hoffman, but my remarks are not suggesting in any way that

6    I'm concurring with the plaintiffs that she did anything wrong,

7    but I think the important issue here is that the officers not

8    only are entitled to qualified immunity to all of these -- with

9    respect to all of these causes of action, but that also many of

10   the causes of action fail factually against these officers.

11             But I think the first issue that jumps out at me after

12   reviewing the complaint is that the fact of the matter, that all

13   the officers did with respect to the Grand Jury presentation,

14   was to show up and answer his questions posed by ADA Hoffman.

15             Plaintiffs seem to suggest that the officers were

16   somehow involved in or had knowledge of what was sufficient

17   evidence before the Grand Jury or what was appropriate evidence

18   before the Grand Jury.

19             And as the Court is aware, in a Grand Jury proceeding,

20   the Assistant District Attorney is responsible for presenting

21   the witnesses that he or she wants to present; asking relevant

22   questions and then instructing the Grand Jurors on the law.

23             So to suggest that somehow the officers, by appearing

24   and answering questions, participated or did something improper

25   is just not -- it just doesn't show an understanding of the

1    Grand Jury process.

2          Furthermore, I think, you know, these -- if you review

3    the complaint, I don't believe the allegations of the prior

4    identification by Brian Bailey upon information and belief, they

5    are asserted as a factual basis, which would substantiate the

6    finding of probable cause for these officers to arrest

7    Mr. Tillman.

8          And furthermore, Judge, if you look, the last activity

9    by these officers took place at the time of their Grand Jury

10   testimony on October 18, 2019.

11         And there is this reference to this supporting

12   deposition.  It's unclear whether the plaintiff thinks the

13   officers prepared, if you were, by Ms. Hoffman.

14         But in any event, Judge, the notion that these

15   officers are deciding what is appropriate testimony before the

16   Grand Jury is just not factually correct.

17         Furthermore, if you look at the causes of actions for

18   malicious prosecution and false arrest, the complaint alleges

19   and as Mr. -- as was outlined by Mr. Rupp, they are alleging

20   that those -- those causes of action commenced after the six

21   months speedy trial time.

22         And, again, the officers have absolutely nothing to do

23   with any aspect of speedy trial.  And when a DA answers ready --

24   ready for trial.

25         In fact, the last -- you know, as far as we know, the

1   last involvement they had with their appearance and testimony on

2   October 18, 2019, the indictment was not voted until

3   October 25th.

4           There is no -- there is no proof as to how the

5   officers would know what other testimony was presented to the

6   Grand Jury; whether Mr. Bailey had to come and testify or

7   whether he ever did come and testify.

8           So I think under the qualified immunity standards,

9   just appearing in a Grand Jury proceeding and answering

10  questions by the Grand -- by -- posed by the Assistant District

11  Attorney does not constitute acts which violate the

12  Constitutional rights of Mr. Tillman or objectively, reasonably

13  believe that what they were doing was somehow improper based on

14  their testimony before the Grand Jury.

15          **THE COURT:**  All right.  Thank you.

16          Mr. Rupp, you can either stay there or --

17          **MR. RUPP:**  Well, all right.  Judge, I'll stay here, if

18  you don't mind.

19          **THE COURT:**  Okay.  Let me -- what did they say that

20  was not true?

21          **MR. RUPP:**  Well, Judge, what they -- here's -- here's

22  the background, if you can indulge me for a second to give you

23  the background --

24          **THE COURT:**  Yeah.

25          **MR. RUPP:**  -- that I think is important.

1         Detective Earp knew and he said in his supporting

2    deposition that, you know, he was very frustrated because none

3    of the alleged victims -- the victims who were hit by gunfire,

4    would cop -- would cop to who shot them.

5         He was very frustrated by that.  And he is on the

6    record as saying that, you know, this became important to him --

7    was personally important to him that these gentleman be

8    prosecuted, because the witnesses wouldn't cooperate.

9         And yet, as he put it in his supporting deposition,

10   the reckless actions of these three individuals put countless

11   lives in jeopardy and hurts business in the tourist areas of

12   Niagara Falls and -- and beyond.

13        He said, for that reason, I'm going to become the

14   complaining witness here.  I'm not going to get a victim to sign

15   out a sworn deposition.  I'm going to do it.

16        So he knew, Judge, and he had a mission here to want

17   to see these men prosecuted.

18        And I think that background is important enough for me

19   to answer your question, because he knew and had met with Doreen

20   Hoffman.

21        And along with Detective Bosi, the three of them had

22   talked about how are we going to identify Garrien Tillman.

23        And it was at that point that we know Doreen Hoffman

24   was told that they couldn't do it themselves and that they

25   couldn't do it in a non-hearsay way.

1       And we know that, because she told the Grand Jury,

2  before she started, that remember to call Brian Bailey.  And

3  then we know she went and got the affidavit from Brian Bailey,

4  that was never signed, never presented, no testimony, but she

5  knew.

6       And she knew that from Earp and Bosi, because they had

7  talked about it.  And this is what we allege as part of the

8  investigatory function, which goes to the qualified -- goes to

9  the absolute immunity standard.

10       That she's not absolutely immune, when she is

11  participating in the investigation with them.

12       They were investigating who is going to be the

13  non-hearsay identifier of Garrien Tillman, so she works with

14  them on that.

15       Bosi and Earp both know that it's critically important

16  that they get that identification, because they talk with her

17  and they meet with her and they give her the name of Mark

18  Bailey -- Brian Bailey, rather.  That's how she gets the name.

19       So when Earp takes the stand in -- in the Grand Jury,

20  Judge, and he's asked the following -- he tells the Grand Jury

21  in his testimony that he --

22       **THE COURT:**  Are you -- you are -- point me to what you

23  are looking at.

24       **MR. RUPP:**  Yeah.  Sure, Judge.  It's exhibit -- I

25  believe it's exhibit -- exhibit --

1          **THE COURT:**  It's the Grand Jury minutes.

2          (Alarm Interruption.)

3          **MR. BOND:**  Hello?

4          **THE COURT:**  I keep waiting for somebody to say

5    something.

6          Mr. Bond, we are still with you.  I don't know why

7    that -- okay.

8          **MR. BOND:**  Okay.

9          **MR. RUPP:**  Judge, it's Exhibit C to our complaint /we

10   attached --

11          **THE COURT:**  Right.

12          **MR. RUPP:**  -- we attached the Grand Jury minutes.

13          **THE COURT:**  Right.

14          **MR. RUPP:**  And if you turn to pages -- I mean, I guess

15   I'll start on the bottom of page 44.

16          And it's -- it's in this line of questioning where in

17   addition to a supporting deposition I referenced a minute ago,

18   you know, Detective Earp goes into some more detail here about

19   how the victims here would not play ball.

20          They would not finger -- and he was sure it was

21   Garrien Tillman.  So he goes ahead and -- and gives the

22   testimony how he identified the three people, including Garrien

23   Tillman from the parole officer.  He says that in his supporting

24   deposition.

25          And then this is the critical transition sentence,

1  Judge, where, again, these three people Bosi, Earp and Hoffman

2  have met.  And as part of their investigative roles in this case

3  they have discussed this.

4        Here's the transition question, Judge, that leapt off

5  the paper at me when my client first brought this to my

6  attention, and I read this; after -- after Earp says:  I cannot

7  identify this guy, because I don't know him, this is the next

8  question out of Doreen Hoffman's mouth.

9        Question:

10       **THE COURT:**  Okay.  What specifically where are you?

11       **MR. RUPP:**  On page 45, Judge.  I wanted to give you

12  the background --

13       **THE COURT:**  Yeah.  Okay.

14       **MR. RUPP:**  -- at least to what I --

15       **THE COURT:**  Okay.

16       **MR. RUPP:**  -- that whole background I think is

17  important.

18       **THE COURT:**  Okay.

19       **MR. RUPP:**  He says in answer to -- I'll just read it

20  into the record:  Did you continue your investigation to try and

21  identify the individuals you found on the video?

22       Answer:  Yes.  We -- we had a little bit of a hard

23  time having witnesses come forth.  Even though the bar was

24  packed, but we found some officers that could identify the

25  people in the video.

1          You know, how convenient.

2          Question:  And who did you develop as your potential

3    suspects?

4          Answer:  John Mulkey, Garrien Tillman and Julian

5    Seright.

6          This is Doreen Hoffman's next question:  And knowing

7    those individuals, Detective Earp did not know Garrien Tillman?

8          And he had made that clear to Doreen Hoffman when she

9    asked that question.  And not minutes before that, he had

10   reconfirmed that he did not know Garrien Tillman.

11         Your Honor, I believe it is not an accident that

12   Doreen Hoffman asked that question, which continues:  And

13   knowing those individuals, have you reviewed the video and are

14   you able to identify who different people are and what they are

15   doing?

16         He answers:  Yes.  Sure.  I can do it.

17         And then he proceeds to stand down, Judge.  And

18   imagine the Grand Jurors who sit there for weeks with nothing,

19   but testimonial evidence presented to them, they now get to

20   watch a shootout on 3rd Street in Niagara Falls on video.

21         That's probably the most exciting moment they had as

22   Grand Jurors during their entire service.  And so the whole

23   question of whether Earp could identify Tillman gets lost and

24   that's exactly what Doreen Hoffman wanted.

25         That's exactly what she wanted.  They just go through

1   a dog and pony show now of Earp identifying Tillman over and

2   over and over again, although, he's never met him and he doesn't

3   know him.

4         And attributing, Judge -- if you read it, this is why

5   I think Mr. Bond's mistaken that Earp and Bosi are not involved

6   in this up to their eyeballs.

7         Earp then proceeds to make a state of mind

8   testimony -- give state of mind testimony about what Tillman was

9   thinking as he's firing the gun and makes pejoratives about the

10  individuals, if you continue to read.

11        As if he knew Tillman and knew his mindset and knew

12  the person of Garrien Tillman and knew what he was prone to

13  doing and liked to do and shooting up people in Niagara Falls.

14        So between the background that I gave you, Judge,

15  about Detective Earp being torqued, because nobody would come

16  forward and identify these individuals; because he had told

17  Hoffman he couldn't identify him, and because he then not only

18  answered a question that he could identify him, knowing it was

19  false, he then proceeded to describe Garrien Tillman as if they

20  were best friends going way back.

21        Here's what Tillman did.  You know, I don't have it

22  flagged, Judge, but if you -- this is a very important part.  I

23  mean, Earp's testimony, in general, is very important to this

24  whole issue.

25        But to me, Judge, it shows that Hoffman and Earp

1    conspired to present this to the Grand Jury and masked it with a

2    dog and pony show with the video to cover for the fact that they

3    did not have non-hearsay identification of Garrien Tillman.

4         And they wanted the Grand Jury to think that they did.

5    And of course the Grand Jury --

6         **THE COURT:**  Well, just if I -- I can interrupt you for

7    a minute.

8         **MR. RUPP:**  -- indict him --

9         **THE COURT:**  Interrupt for a minute.

10        **MR. RUPP:**  Yes.

11        **THE COURT:**  I'm looking at page 47 --

12        **MR. RUPP:**  Yep.

13        **THE COURT:**  -- of the Grand Jury minutes at line 20,

14   he says -- and this is Garrien on the right here.  So he's

15   referring to the video?

16        **MR. RUPP:**  Yes, he is, Judge.  And at line 15 he says

17   the same thing.  So he goes from I don't know this man --

18        **THE COURT:**  Yeah.

19        **MR. RUPP:**  -- to there he is.  That's him.  And

20   then -- and then he says what he's thinking at different places.

21        He's got, you know, all sorts of an homonym remarks

22   about what the individual shooters were thinking as they were

23   going around apparently shooting people.

24        **THE COURT:**  Okay.

25        **MR. RUPP:**  And that, Judge, to me, is -- is why

1   Detective Earp -- and, Judge, Detective Bosi, while we're on the

2   subject of Mr. Bond's two clients, which I think might present a

3   conflict for him, Judge, because they have different defenses --

4   but Detective Bosi presented the Mulvey statement, as to the

5   Grand Jury, which he knew was hearsay, and he knew darn well

6   that Mulvey had never identified Garrien Tillman.

7         So both officers meet with Doreen Hoffman as part of

8   their investigation into this matter, not a prosecutorial wall.

9   And to Mr. Crosby's point that that's all advocacy, Judge, and

10  prosecutorial, the police officers are doing it too.

11        All three of them sitting down as an investigative

12  function and trying to come up with the identifier -- the

13  witness who can identify.

14        That's investigation.  It's not advocacy.  It's not

15  prosecutorial, because police officers can't do that -- can't do

16  a prosecutorial role.

17        So we know it's Hoffman entering their realm, trying

18  to find a non-hearsay person who can identify Garrien Tillman.

19        So they all know that going into the Grand Jury

20  testimony and then they give this testimony -- which I believe

21  is indicative of knowledge and a conspiracy, Your Honor.

22        **THE COURT:**  All right.  I -- I think I have your

23  position.

24        Mr. Bond, briefly anything else you wish to say?

25        **MR. BOND:**  Just -- just a few things, Judge.  First of

1  all, as the Court is aware, the people of the State of New York

2  and the police officers can be the complaining witness in

3  prosecuting an action.

4          The fact that they brought these charges without a

5  complainant who would cooperate is not unusual.

6          The second thing is, Judge, the -- the Mr. -- there is

7  a suggestion that they knew ahead of time that they needed

8  this -- that they were false -- or creating this conspiracy to

9  falsely present hearsay testimony about the identification, it

10  took the Court of Appeals to decide that question and yet

11  Mr. Rupp suggests that these officers have this knowledge,

12  number one.

13          Number two, Judge, if you can take as Mr. Rupp said

14  Officer Earp specifically said he didn't -- he couldn't identify

15  him.

16          But if you look at the supporting deposition that was

17  prepared for Brian Bailey, you'll see that Detective Earp met

18  with Bailey, showed him photos of -- from the night and Garrien

19  Tillman was identified.

20          So in response to ADA Hoffman's questions, when he

21  goes through the video, although he can't provide non-hearsay

22  identification for the purposes of satisfying Pelchat, he does

23  point out who all the players are because Mr. Tillman has been

24  identified to him.

25          So -- and with respect to Detective Bosi, Judge, we

 1   presented to you the entire CD, but, again, that goes back to,

 2   you know, the underlying complaint is that it's hearsay

 3   evidence.

 4        And everything that gets said in the Grand Jury,

 5   everything that the Grand Jurors are allowed to consider, any

 6   instructions they are supposed to get regarding what not to

 7   consider, that's all the province of the ADA and its not up to

 8   the detectives to -- to just stand up and start spewing forth

 9   testimony.

10        **THE COURT:**  All right.  Thank you.

11        Counsel, I have your positions.  As I indicated at the

12   outset, I'm going to re-review the papers more than once.

13        I've reviewed them already, but I will do so again.  I

14   think you all know that regardless of what my -- this is a

15   dispositive issue, so regardless of what my recommendation to

16   District Judge Sinatra will be, if there are objections, he'll

17   be taking another de novo review of it.

18        And against that backdrop, I -- I'm just going to ask

19   you all -- I know this is an early stage of the case, depending

20   on the -- on the ultimate decision on this -- these motions, it

21   may be a late stage in the case or it -- it may still be an

22   early stage, but I know that there hasn't been, at least

23   formally, any type of settlement discussions, mediation which we

24   would normally have if the case is going to proceed.

25        And let me just ask all of you, is it a waste of time

1  and effort to have any discussions or should I just go ahead and

2  do whatever it is I'm going to do?

3         **MR. RUPP:**  Judge, on behalf of the plaintiff, we're

4  always willing to -- there have been no discussions, as Your

5  Honor points out.

6         I don't know if there is any willingness on the part

7  of the defendants or their insurance carriers to talk, but we're

8  always willing to talk.  It never hurts.

9         **THE COURT:**  Okay.

10        Mr. Crosby --

11        **MR. CROSBY:**  At this point, Your Honor, I don't see

12  anything to be gained buy having mediation.

13        **THE COURT:**  Okay.

14        **MR. CROSBY:**  And I would point out to counsel that the

15  county is self-insured.  There is no insurer.

16        **THE COURT:**  Okay.  All right.  Okay.

17        Mr. Bond, how about you?

18        **MR. BOND:**  Yeah, Judge.  The City is also

19  self-insured.  I think we'll need to have this issue addressed,

20  before there could be any beneficial settlement discussions.

21        **THE COURT:**  Okay.  Fair enough.

22        I just wanted to ask.

23        **MR. RUPP:**  Judge, may I have -- I know we're done, but

24  could I have 15 seconds to address one thing that Mr. Bond said?

25        And I will not take more than 15 seconds.

1          **THE COURT:**  Okay.  I'm looking at my watch.

2          **MR. RUPP:**  Here I go, Judge.  The case law that we

3    cited in our memorandum of law, I can't put my finger on it,

4    said that when the officers are the ones who commenced the

5    criminal prosecution as the complaining witnesses, they are

6    responsible for what happens down the line through the

7    prosecution.

8          They don't just get to say that the prosecutor took

9    over and we were out.

10          Thank you.

11          **THE COURT:**  All right.  Thank you.

12          Okay.  Thank you all.

13          **MR. RUPP:**  Thank you, Judge.

14          **THE COURT:**  All right.  Thank you.  And I will get to

15    it.  I can't promise you when you will get a decision, but you

16    will get a decision.

17          **MR. RUPP:**  Appreciate that, Judge.

18

19              (Proceedings concluded at 12:10 p.m.)

20                        *    *    *

21

22

23

24

25

1

2      "I certify that the foregoing is a correct transcript, to the

3        best of my ability, from the record of proceedings in the

4                          above-entitled matter."

5

6

7      *s/ Bonnie S. Weber*                    April 21, 2023
        Signature                              Date

8

9    BONNIE S. WEBER, RPR

10   Official Court Reporter
     United States District Court
11   Western District of New York

12

13

14

15

16

17

18

19

20

21

22

23

24

25